54 Cal.App.4th 190 (1997)
In re MICHAEL W. et al., Persons Coming Under the Juvenile Court Law.
LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent,
v.
MELISSA W., Defendant and Appellant.
Docket No. B103798.
Court of Appeals of California, Second District, Division One.
April 14, 1997.
*192 COUNSEL
Stephanie M. Davis, under appointment by the Court of Appeal, for Defendant and Appellant.
De Witt W. Clinton, County Counsel, Auxiliary Legal Services, Jill Regal and Gary P. Gross for Plaintiff and Respondent.
OPINION
VOGEL (Miriam A.), J.
In this dependency case, the question is whether the noncustodial parent is entitled to an evidentiary hearing before the juvenile court decides custody and visitation issues ancillary to the termination of jurisdiction and the transfer of the case to the family law court. We hold that, when requested, an evidentiary hearing must be held.

FACTS
Melissa W. and Martin W. were husband and wife when their son Michael was born in April 1988, but they later separated and became embroiled in a custody dispute. In August 1993, the Department of Children and Family Services took five-year-old Michael into protective custody, and an amended *193 petition charging Melissa with physical abuse was ultimately sustained. Michael was placed with Martin, with monitored visits for Melissa which were changed to unmonitored, alternate weekend visits beginning in September 1994.[1] In March 1995, the juvenile court was prepared to terminate jurisdiction and award joint legal custody to Martin and Melissa, with sole physical custody to Martin and reasonable visits for Melissa, but backtracked when the parents were unable to agree on a summer schedule, at which point a supplemental psychological evaluation was ordered. While the court was waiting for the evaluation, DCFS reported that Michael had told his case worker that Melissa had given him a black eye during a recent weekend visit. As a result, the court temporarily abandoned its plan to terminate jurisdiction, restricted Melissa's contact to monitored visits, and directed DCFS to conduct a further investigation.
In August 1995, DCFS reported that Melissa was suffering from depression (she discussed her problems with the case worker and her medical records were reviewed by DCFS) and had been hospitalized earlier that summer. A variety of medications had been prescribed, and Melissa remained under treatment as an out-patient. The court retained jurisdiction and continued Melissa's monitored visits.
In April 1996, by which time Melissa's condition apparently had improved, the court held a hearing to determine whether to terminate jurisdiction and refer the case to the family law court for further proceedings. Melissa's request for an evidentiary hearing to establish her progress during recent counseling was denied, Martin was awarded physical custody of Michael, with only monitored visits for Melissa, and jurisdiction was terminated. A few days later, Melissa again requested a hearing on the issue of visitation (she wanted unmonitored visits). The court again refused to hold a hearing, finding there was no "change of circumstances," and that it was in Michael's best interests to continue with monitored visits until such time as Melissa's therapist could give an "unconditional recommendation" for unmonitored visits. The court said it was "strongly influenced and impressed by the lack of emotional control that the mother exhibited here in open court" which (without benefit of a hearing or expert testimony) the court said "belied the statement of [Melissa's attorney] that [Melissa] is ready for unmonitored visits."
On May 8, the court made its final order, enlarging its scope and granting not only physical custody to Martin, but also sole legal custody of Michael, with only monitored visits for Melissa. Melissa appeals.

*194 DISCUSSION
(1a) Melissa contends she was entitled to a hearing before the dependency court made its custody and visitation orders, terminated jurisdiction and transferred the matter to family law court. We agree.[2]
In In re Elaine E. (1990) 221 Cal. App.3d 809 [270 Cal. Rptr. 489], the Sixth District held that subdivision (c) of section 364 of the Welfare and Institutions Code compels the juvenile court to terminate jurisdiction unless circumstances justifying an initial assumption of jurisdiction continue to exist.[3] The way the Sixth District reads the statute, when a section 364 hearing is held to determine whether jurisdiction should be terminated, the noncustodial parent is not entitled to an opportunity to present evidence to show why the visitation orders should be changed before the case is transferred to the family law court. Instead, the noncustodial parent's only remedy is a petition under section 388, which requires a showing of "changed circumstances."[4] (In re Elaine E., supra, 221 Cal. App.3d. at pp. 814-815.)
In In re Roger S. (1992) 4 Cal. App.4th 25 [5 Cal. Rptr.2d 208], Division Three of the Fourth District refused to follow Elaine E. We believe Roger S. is the better reasoned case and makes far more sense than Elaine E., and thus adopt its reasoning and follow it here. This is what Roger S. holds: "We think [that] when making an order to be transferred to the family court, the juvenile court has the power to hear evidence relevant to that order under *195 section 362.4, which the Elaine E. court did not discuss.[[5]] When the juvenile court terminates its jurisdiction over a dependent child, section 362.4 authorizes it to make custody and visitation orders that will be transferred to a[] ... family court file and remain in effect until modified or terminated by the superior court. As section 362.4 gives the juvenile court power to fashion termination orders, it makes no sense to interpret section 364 to preclude the court from considering evidence relevant to that task. To the extent Elaine E. implies that a trial court cannot receive evidence concerning visitation under section 362.4, we decline to follow it.
"Section 388, on the other hand, is a general provision to be used by any interested party when circumstances merit an examination of the orders affecting a dependent child other than the periodic reviews prescribed by statute; if the petition is sufficiently compelling, the court is empowered to set an immediate hearing on the matter. In this case, however, the trial court had the parties before it for the specific purpose of assessing progress and determining whether judicial intervention could be withdrawn. Having decided to terminate jurisdiction, the court chose to exercise its power to make a termination order. It erred, however, in refusing to consider the father's evidence on visitation, closing its eyes to the recommendations of the case worker, and finding it was compelled to adopt the existing seven-month-old visitation order without change.
(2) "Although both the family court and the juvenile court focus on the best interests of the child, the juvenile court has a special responsibility to the child as parens patriae and must look at the totality of the child's circumstances. `It is one thing for a family law court to determine the best interests of the child as between two parents under title 4 of the Family Law Act (Civ. Code, § 4600 et seq.). It is quite another for a juvenile court to determine the best interests of the child in a proceeding where there is the possibility both parents could lose custody or visitation rights.' (In re Benjamin D. (1991) 227 Cal. App.3d 1464, 1470, fn. 4....) By empowering the juvenile court to issue custody and restraining orders, the Legislature has expressed its belief that `the juvenile court is the appropriate place for *196 these matters to be determined and that the juvenile court's orders must be honored in later superior court proceedings.' (Seiser, Custody and Restraining Orders in the Juvenile Court (Aug. 1990) Family Law NewsAlert (Cal.Ed.) 4, 8.) The trial court here, by refusing to accept evidence relevant to the visitation order, was in danger of issuing an uninformed order which could fail to serve the best interests of the child." (In re Roger S., supra, 4 Cal. App.4th at pp. 30-31, fn. omitted.)
(1b) In our view, a dependency court ought to accept all the help it can get before it makes an order affecting the lives of the children and parents who appear before it, and we cannot condone a deliberate decision to impose artificial restrictions on the parties' ability to bring relevant evidence to the attention of the court. We therefore adopt the rule of Roger S. and refuse to follow Elaine E.
(3) There remains the issue of prejudice (Cal. Const., art. VI, § 13), a factor clearly present in this case. To begin with, we presume some prejudice from the simple fact that a family law court will naturally defer to a recent order of the dependency court concerning custody and visitation. During the period dependency jurisdiction continues, the juvenile court has preemptive jurisdiction to adjudicate custody and visitation, and no other court may enforce any order that conflicts or interferes with the juvenile court's orders. (In re Travis C. (1991) 233 Cal. App.3d 492, 503 [284 Cal. Rptr. 469]; In re Benjamin D. (1991) 227 Cal. App.3d 1464, 1469 [278 Cal. Rptr. 468].) Since the orders made by a juvenile court at a section 364 hearing are necessarily made while dependency jurisdiction continues, it follows logically that a family law court would defer to those orders and hesitate to second-guess the juvenile court judge, at least absent something more than the ordinary showing of changed circumstances. (Cf. In re Roger S., supra, 4 Cal. App.4th at p. 30 [the dependency court's custody order remains in effect until modified or terminated by subsequent order of the superior court]; In re Chantal S. (1996) 13 Cal.4th 196, 203 [51 Cal. Rptr.2d 866, 913 P.2d 1075] [same]; see also In re Jennifer R. (1993) 14 Cal. App.4th 704, 711-713 [17 Cal. Rptr.2d 759]; In re Robin N. (1992) 7 Cal. App.4th 1140, 1145-1146 [9 Cal. Rptr.2d 512].)
Moreover, on the particular record before us, we consider it probable that the result would have been different had the hearing been held and the doctor's testimony fairly considered. Melissa's motion was supported by a declaration from her doctor, to the effect that he had then-current relevant information regarding her progress, and that he "strongly recommend[ed]" that unmonitored visits be reinstated. For this reason, the juvenile court's comments about its familiarity with stale reports and its general attitude *197 suggest that its eagerness to get this case out of the dependency court and into the family law court might have had something to do with calendar management problems or budgetary issues and questions about whether Melissa would be entitled to appointed counsel if she had to make her motion in family law court. However real the court's fiscal problems may be, those considerations cannot affect decisions such as the one at issue here.
It follows that we find the juvenile court's refusal to hold an evidentiary hearing prejudicial, that we must reverse the order terminating jurisdiction (along with its ancillary custody and visitation orders), and that we must remand for the evidentiary hearing requested by Melissa.

DISPOSITION
The orders terminating jurisdiction, granting sole legal custody to Martin, and granting only monitored visits to Melissa are reversed, and the cause is remanded to the dependency court with directions to hold the evidentiary hearing requested by Melissa, and to thereafter decide anew the issues of jurisdiction, custody and visitation.
Spencer, P.J., and Masterson, J., concurred.
NOTES
[1] Michael has a half-sister, Megan L., who was originally detained with Michael. Megan was returned to Melissa in January 1994, and jurisdiction over Megan was terminated in August 1994.
[2] Although the juvenile court at one point said that Melissa's request for a hearing was untimely, DCFS does not, on this appeal, suggest there was a timeliness or any other procedural issue, and simply addresses the merits of Melissa's arguments. We do likewise.
[3] Unless otherwise stated, all section references are to the Welfare and Institutions Code. Subdivision (c) of section 364 provides as relevant that: "After hearing any evidence presented by the probation officer, the parent, the guardian, or the minor, the court shall determine whether continued supervision is necessary. The court shall terminate its jurisdiction unless the probation department establishes by a preponderance of evidence that the conditions still exist which would justify initial assumption of jurisdiction under Section 300, or that such conditions are likely to exist if supervision is withdrawn...."
[4] As relevant, section 388 provides: "Any parent or other person having an interest in a child who is a dependent child of the juvenile court ... may, upon grounds of change of circumstance or new evidence, petition the court in the same action in which the child was found to be a dependent child of the juvenile court ... for a hearing to change, modify, or set aside any order of court previously made or to terminate the jurisdiction of the court...." According to In re Elaine E., supra, 221 Cal. App.3d at page 815, this "section plainly provided a vehicle for [the noncustodial parent] to petition the court for increased or unsupervised visitation if he were dissatisfied with the existing juvenile court visitation orders."
[5] Section 362.4 provides, as relevant, that when "the juvenile court terminates its jurisdiction over a minor who has been adjudged a dependent child ..., and proceedings for the dissolution of marriage ... of the minor's parents ... are pending in the superior court ..., the juvenile court ... may issue ... an order determining the custody of, or visitation with, the child. [¶] Any order issued pursuant to this section shall continue until modified or terminated by a subsequent order of the superior court. The order of the juvenile court shall be filed in the [superior court] proceeding ... at the time the juvenile court terminates its jurisdiction over the minor.... [¶] If no action is filed or pending relating to the custody of the minor in the superior court..., the juvenile court order may be used as the sole basis for opening a file in the superior court of the county in which the parent, who has been given custody, resides...."