Filed 3/4/16  In re Maliah R. CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re MALIAH R., a Person Coming Under the Juvenile Court Law. | |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> SARAH M., <br><br> Defendant and Appellant. | B265692 <br><br> (Los Angeles County <br> Super. Ct. No. DK05486) |

APPEAL from an order of the Superior Court of Los Angeles County, D. Zeke Zeidler, Judge.  Affirmed.

Janette Freeman Cochran, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of the County Counsel, Mary C. Wickham, County Counsel, Dawyn R. Harrison, Assistant County Counsel and Jeanette Cauble, Deputy County Counsel, for Plaintiff and Respondent.

Appellant Sarah M. (Mother) appeals the juvenile court decision to terminate jurisdiction over her four-year-old child, Maliah R., and issue an exit order granting physical custody to Maliah's father, T.R. (Father). Appellant contends substantial evidence did not support the court's finding that the child would be safe in Father's home without court supervision, and that the court abused its discretion in refusing to extend jurisdiction in order to provide further reunification services to her and continue to supervise visitation. Finding sufficient evidence to support the court's finding and no abuse of discretion, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Maliah was born in 2011, when Mother was 15. The Department of Children and Family Services (DCFS) initiated a dependency proceeding putting Mother under juvenile court jurisdiction.[1] Mother was placed in a group home with Maliah. In December 2012, when Maliah was one, Mother left her with Father, who was residing with the paternal grandmother and a paternal aunt. Mother maintained contact, but relations between Mother and Father were poor, and a number of physical and verbal altercations took place.

On May 12, 2014, when Maliah was two, Father gave Mother permission to visit Maliah on his front porch. Mother went inside the house and refused to leave. Father grabbed Mother to forcefully evict her. They fell to the floor. Mother called the police, contending Father had pushed her and struck her in her stomach. This resulted in Father's arrest and a referral to DCFS.[2] On May 19, when the

---

[1] Mother's adoptive mother abandoned the family and her adoptive father died when Mother was 14. Mother became pregnant shortly thereafter.

[2] There had been a number of prior referrals, when Mother had custody of Maliah and was living in a group home. Mother was accused of getting into a fight with another resident while holding Maliah, of smoking in Maliah's presence despite the child's

*(Fn. continued on next page.)*

caseworker arrived to interview Father, he already had begun attending parenting classes and had arranged to begin a domestic violence program the following week. Maliah appeared well cared for and bonded to Father and the paternal relatives with whom they lived. Mother, who had just turned 18, was homeless at the time and did not cooperate with efforts to place her. The caseworker who had been attempting to assist Mother since 2011, when her separate dependency proceeding began, said this was typical behavior, and that Mother had left so many placements without notice that he had lost track of her. The caseworker for Maliah's case learned Mother had been diagnosed with bipolar II and anxiety disorder. Mother reported that she had been prescribed a mood stabilizer, but did not confirm that she was taking the medication.[3]

Maliah's caseworker conducted a team decision meeting. Mother acknowledged she was unable to provide care for Maliah and agreed that the girl should stay with Father while she worked on becoming stable. However, Mother subsequently became belligerent and refused to sign the plan. The caseworker concluded that Maliah would be safe with Father under court supervision, but recommended that the girl be "removed" from Mother's custody and that Mother be limited to monitored visits. The court detained the child from Mother and ordered visits to be monitored. The court also instructed DCFS to provide referrals for Mother for a psychiatric evaluation and individual counseling.

---

asthma, and of failing to take the girl to a medical appointment or to consistently administer her asthma medication. There had also been a referral after Father assumed custody, alleging Father had threatened to hit Mother. The referrals were all closed as "unfounded."

[3] Both Father and the grandmother subsequently reported incidents in the past in which Mother appeared to be having delusions or suffering some sort of mental breakdown. The caseworker learned that Mother had been involuntarily hospitalized in April 2013.

In the August 2014 jurisdictional report, the caseworker reported Mother was visiting Maliah regularly, but not maintaining contact with the caseworker. Father reported that the May 2014 domestic violence charge would be dismissed once he completed a 52-week domestic violence program. The grandmother reported that Maliah enjoyed visiting Mother and looked forward to seeing her. Father said he wanted to maintain Mother's visitation and her bond with Maliah.

In July 2014, Mother moved to Las Vegas without informing the caseworker and did not visit Maliah until she returned in September. In October, the caseworker reported continued difficulty maintaining contact with Mother or ascertaining where she was living. Mother was not participating in any mental health services.

At the October 1, 2014 contested jurisdictional hearing, the court found true that Father and Mother had a history of engaging in violent altercations. The court found that Father pushed Mother, causing her to fall, and that Mother scratched Father's face and struck Father, but deleted the allegation that Father had hit Mother in the stomach. The court further found that Mother had a history of mental and emotional problems rendering her unable to provide regular care and supervision of the child, and that Father had failed to protect the child from Mother.[4] The court ordered Mother to obtain a psychiatric evaluation and mental health counseling, and to attend a domestic violence program and a parenting class. The court ordered Father to attend a domestic violence program and a parenting class, and to participate in individual counseling to address case issues, including anger management, relationship issues and co-parenting.

---

[4] The court asserted jurisdiction under Welfare and Institutions Code section 300, subdivisions (a) (serious physical harm) and (b) (failure to protect). Undesignated statutory references are to the Welfare and Institutions Code.

In March 2015, the caseworker reported that Father had relocated from his mother's home to live with his fiancée, and that Maliah continued to do well in Father's home. Father reported he had completed 23 weeks of parenting classes and 26 weeks of his domestic violence program, but would be unable to begin individual counseling until Maliah began preschool. The caseworker expressed the opinion that Father had addressed relevant case matters through his parenting and domestic violence abuse courses. The caseworker reported Maliah was happy to visit Mother, but that Mother sometimes behaved inappropriately during visits by attempting to find something wrong with the child or by telling her she would soon be relocating to live with Mother. Father reported that Maliah had said Mother threatened to take her "'far away from daddy.'" In the months since the jurisdictional hearing, Mother had not participated in any reunification services.

In January 2015, Mother texted the caseworker that she was relocating to Houston to "better herself" and become more independent and financially secure. The caseworker stated that it did not appear "realistically possible" to provide Mother further services, and recommended that jurisdiction be terminated.

After her move to Texas, Mother attempted to maintain telephonic contact with Maliah, but many calls were terminated as Father and Mother disputed what topics were appropriate to discuss. In February 2015, Mother complained to the caseworker, who instructed Father to facilitate Skype and telephonic communication, reminding him of his responsibility to make Maliah available for visits with Mother. In the March 2015 status report, the caseworker reported that Mother had participated in a one-month parenting program in Texas in February and March 2015, but had not enrolled in a domestic violence program or individual counseling. Texas authorities had concluded Mother did not meet the criteria necessary to receive public mental health services.

5

At the May 5, 2015 section 364 hearing, DCFS recommended terminating jurisdiction. Counsel for Maliah concurred with DCFS's recommendation, as did Father's counsel. Mother presented evidence that she had begun therapy in Texas and was projected to complete a domestic violence program by May 26. Her counsel asked the court to exercise its discretion to grant Mother further services. Counsel also contended it would be premature to terminate jurisdiction over Maliah because Father was not in full compliance with his case plan, as he had not yet participated in individual counseling. She expressed concern that Father would not permit Mother to visit without court supervision. Father's counsel denied his client had interfered with Mother's communication with Maliah and stated Father would comply with whatever visitation schedule the court ordered. The court found that Father had complied with the case plan and had resolved the issues that brought the child into the system, and that Maliah was no longer at risk. The court terminated jurisdiction, issuing an order granting joint legal custody to Mother and Father, and sole physical custody to Father. Mother was granted monitored visits on a schedule to be determined by the parents. Mother appealed.

**DISCUSSION**

A. *Continued Jurisdiction to Protect Maliah*

When a juvenile court finds that a child falls under one of the jurisdictional provisions of section 300, it may declare the child a dependent without removing him or her from the parent's home. (*In re Aurora P*. (2015) 241 Cal.App.4th 1142, 1154 (*Aurora*); *Bridget A. v. Superior Court* (2007) 148 Cal.App.4th 285, 302.) The court must hold hearings to review the status of the child every six months thereafter, as long as jurisdiction is retained. (*Aurora*, *supra*, 241 Cal.App.4th at p. 1154.) Section 364 governs hearings where, as here, "an order is made placing a child under the supervision of the juvenile court pursuant to Section 300" but "the

6

child is not removed from the physical custody of his or her parent or guardian . . . ." (§ 364, subd. (a).) Hearings under section 364 are governed by the provisions of section 364, subdivision (c): "After hearing any evidence presented by the social worker, the parent, the guardian, or the child, the court shall determine whether continued supervision is necessary. The court shall terminate its jurisdiction unless the social worker or his or her department establishes by a preponderance of evidence that the conditions still exist which would justify initial assumption of jurisdiction under Section 300, or that those conditions are likely to exist if supervision is withdrawn." (§ 364, subd. (c).)

As explained in *Aurora*, "[w]hile the statute speaks in terms of the social worker or department establishing the basis for continuation of dependency jurisdiction, the first sentence of section 364(c) makes clear that the parent, the guardian, or the child may offer evidence on that question. [Citation.]" (*Aurora*, *supra*, 241 Cal.App.4th at p. 1155; accord, *In re J.F.* (2014) 228 Cal.App.4th 202, 210.) The juvenile court is not bound by the recommendation of the social worker or social services agency, but makes an independent determination whether to terminate or retain jurisdiction based on the "'preponderance of evidence.'" (*Aurora*, *supra*, at p. 1155; accord, *In re J.F.*, *supra*, 228 Cal.App.4th at p. 212.) As the court in *Aurora* further explained, because the statute states that the court "shall" terminate jurisdiction unless "'the conditions still exist which would justify initial assumption of jurisdiction under section 300,'" the party seeking continuance of the court's jurisdiction bears the burden of proof. (*Aurora, supra,* 241 Cal.App.4th at pp. 1162-1163.) We review the juvenile court's findings under section 364 for substantial evidence. (*Aurora*, *supra*, at p. 1156; *In re D.B.* (2015) 239 Cal.App.4th 1073, 1086.)

Here, DCFS, Father and Maliah's attorney were all in agreement that Maliah would be safe with Father without court supervision, and that jurisdiction should

7

be terminated. Mother, as the sole objector, bore the burden of proving otherwise. Mother introduced no new evidence pertaining to Father. Instead, she sought to rely on Father's failure to participate in individual counseling and the principle that "[f]ailure of the parent . . . to participate regularly in any court ordered treatment program shall constitute prima facie evidence that the conditions which justified initial assumption of jurisdiction still exist and that continued supervision is necessary." (§ 364, subd. (c).) She makes the same argument on appeal, contending "Father's failure to participate in individual counseling constituted prima facie evidence that continued supervision was necessary."

"A statute providing that a fact or group of facts is prima facie evidence of another fact establishes a rebuttable presumption." (Evid. Code, § 602.) The evidence presented was sufficient to rebut the presumption. The caseworker's reports established that Father had been participating in a parenting class and a domestic violence program since immediately after the May 2014 detention. By the time of the review hearing in May 2015, Father had attended 23 weeks of parenting classes and 26 weeks of the domestic violence program. The caseworker investigating Father's reunification efforts concluded that Father had addressed the pertinent case issues through his participation in those programs. In addition, Father had committed to beginning individual counseling when Maliah started preschool, had found stable housing for himself and Maliah, and was in a committed relationship. Maliah had been well cared for throughout this period, first by Father and his relatives, and then by Father and his fiancée. Father and Mother were no longer in direct contact and Mother was living out of state, eliminating the risk of domestic violence between the two. Based on this evidence, the juvenile court reasonably concluded that Father had resolved the issues pertinent to him that had brought Maliah into the system, and that she was not at risk in his home.

8

B. *Continued Jurisdiction to Provide Services for Mother*

Mother alternatively contends that the court should have continued jurisdiction in order to provide services for her, asserting that as a former dependent child herself, she is entitled to assistance until she reaches 21. We disagree that the court was obliged to keep Maliah's case open to provide services to Mother.

Although section 364 contains no reference to offering services to a noncustodial parent, "in accordance with the juvenile court's responsibility to weigh all of the factors present in a dependency case and to provide orders that will serve a child's best interest, the court has discretion to provide services for the [noncustodial] parent if the court determines that doing so will serve the child's best interests." (*In re Gabriel L.* (2009) 172 Cal.App.4th 644, 652; see *Aurora*, *supra*, 241 Cal.App.4th at p. 1154, quoting *Bridget A. v. Superior Court*, *supra*, 148 Cal.App.4th at p. 302 [where dependent child is not removed from parents' custody, court may order family maintenance services to "'ameliorate the conditions that made the child subject to the court's jurisdiction.'"].) "The court also has discretion to find that the ordering of such services to the [noncustodial] parent is not in the child's interest and to not order services for that parent." (*In re Gabriel L., supra,* 172 Cal.App.4th at p. 652.) Because a proceeding under section 364 involves a child in the custody of a parent, the court's primary concern is not with reunification services but with determining "'whether the dependency should be terminated or whether further supervision is necessary.'" (*Aurora*, *supra*, 241 Cal.App.4th at p. 1155; see *In re Pedro Z.* (2010) 190 Cal.App.4th 12, 20 [goal of dependency proceedings is to reunify child with "at least one" parent].)

If services are provided, "'at each review hearing, the court must evaluate the efforts or progress toward reunification made by each parent individually by

considering "the extent to which he or she availed himself or herself to services provided.""" (*In re Katelynn Y.* (2012) 209 Cal.App.4th 871, 877, quoting *In re Jesse W.* (2007) 157 Cal.App.4th 49, 60, italics omitted.) Termination is appropriate where "the action or inaction of the parent creates a substantial likelihood that reunification will not occur because the parent has failed to visit the child or participate regularly and make substantive progress in a court-ordered treatment plan." (*In re Katelynn Y., supra,* 209 Cal.App.4th at p. 876-877.) The standard of review on a challenge to the court's denial of reunification services to the parent who does not have custody is abuse of discretion. (*In re Nada R.* (2001) 89 Cal.App.4th 1166, 1179.)

Here, Mother failed to keep in contact with the caseworker throughout these proceedings. She refused offers of housing. There were months-long periods of failure to visit when she was living outside California. She did nothing to avail herself of services until March 2015, when she enrolled in a one-month parenting class in Texas. Although the court based its jurisdictional finding in large part on Mother's mental instability, she had not obtained a mental health evaluation or begun therapy by the date of the section 364 hearing.

While it may be in Mother's best interest to continue receiving services until she reaches the age of 21, her best interest is an issue for her own dependency proceeding. (See § 303 ["The court may retain jurisdiction over any person who is found to be a ward or a dependent child of the juvenile court until the ward or dependent child attains the age of 21 years."]; *In re Shannon M.* (2013) 221 Cal.App.4th 282, 300, quoting § 391, subd. (b)(2) [terminating jurisdiction over a dependent person who has attained majority requires department to prepare report outlining "'whether it is in the nonminor's best interest to remain under the court's dependency jurisdiction'"].) The underlying proceeding was necessarily focused on Maliah, and her best interest. Once the court concluded the child was safe in

10

the home of Father because Father had dealt with the issues pertinent to him raised in the jurisdictional findings, it was reasonable for the court to conclude that it was in Maliah's best interest to terminate jurisdiction.

        C. *Continued Jurisdiction to Supervise Visitation*

Mother contends the court was required to continue jurisdiction in order to supervise visitation and ensure Mother was able to maintain contact with Maliah. Mother cites no authority for the proposition that a juvenile court must retain jurisdiction to supervise parental visitation, and we are aware of none.

Mother was entitled to address visitation at the May 5, 2015 hearing. (See *In re Michael W*. (1997) 54 Cal.App.4th 190, 194-197 [parents entitled to evidentiary hearing on visitation issues prior to issuance of exit order and transfer to family court at § 364 hearing]; *In re Roger S*. (1992) 4 Cal.App.4th 25, 29-30 [juvenile court erred in failing to receive evidence regarding appropriate visitation order at § 364 hearing]; but see *In re Elaine E*. (1990) 221 Cal.App.3d 809, 813-815 [parent must show changed circumstances under § 388 if dissatisfied with existing visitation order; inquiry at § 364 hearing is limited to whether conditions for continuing supervision exist].) Mother's counsel mentioned the problems that had arisen since Mother had moved to Texas, and asked the court to continue jurisdiction to supervise visitation. She did not ask that any specific provisions regarding visitation be included in the exit order and did not object to the court's decision to leave the specifics of visitation to the parents. Nor on appeal does Mother identify deficiencies in the exit order. In short, the court did not err in refusing to continue jurisdiction in order to supervise visitation, and any specific issues with respect to the terms of the court's order are forfeited.

## DISPOSITION

The order terminating jurisdiction is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


MANELLA, J.


We concur:


EPSTEIN, P. J.


COLLINS, J.