Filed 10/29/21; Certified for Publication 11/10/21 (order attached)

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re R.F. et al., Persons Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | E076526 |
| Respondent, | (Super. Ct. Nos. J85440, J285441) |
| v. | OPINION |
| B.F., | |
| Appellant. | |

APPEAL from the Superior Court of San Bernardino County. Erin K. Alexander, Judge. Reversed.

John L. Dodd, under appointment by the Court of Appeal, for Appellant.

Michelle D. Blakemore, County Counsel, and Pamela J. Walls, Deputy County Counsel, for Respondent.

1

# I.

# INTRODUCTION

During a jurisdiction/disposition hearing, the juvenile court ordered jurisdiction over R.F. (born in 2016) and L.F. (born in 2013), removed the children from Father's custody based on drug abuse findings, and permitted the children to remain with Mother on a plan of family maintenance. Father appeals from a post-disposition order and judgment dismissing the juvenile dependency case and entering exit orders awarding Mother sole custody, decreasing Father's supervised visitation, and requiring Father's visitation to be supervised by a professional monitor at Father's expense.

Father contends that he did not receive notice and a meaningful opportunity to be heard before the juvenile court dismissed the proceedings and entered the exit orders. Father further argues that the errors were structural, requiring automatic reversal, and, if not structural, they constitute prejudicial reversible error.

We conclude there is no evidence in the record that Father received proper notice or an opportunity to be heard before the juvenile court terminated dependency jurisdiction and imposed the exit orders. In addition, the visitation order is ambiguous as to whether the court ordered visitation a minimum of once a week or every other week. These errors constitute prejudicial error requiring reversal of the order terminating dependency jurisdiction, the exit orders, and the judgment entered on January 15, 2021.

2

## II.

## FACTS AND PROCEDURAL BACKGROUND

Mother and Father married in 2013. They have two children together, L.F. and R.F. Mother and Father separated in 2017. The family court awarded Mother and Father joint legal custody of the children, primary physical custody to Mother, and weekly visitation for Father. Throughout the dependency proceedings, Mother and the children lived with the children's maternal grandmother (MGM). Father lived with his parents in Los Angeles. After Father was arrested for drug-related offenses in December 2019, Mother requested and the family court denied emergency temporary sole custody of the children.

On April 13, 2020, San Bernardino County Children and Family Services (CFS) received a referral alleging general neglect of R.F. and L.F. by Father. The referral further alleged Father might be using drugs in the children's presence. The referral stated that on April 12, 2020, Mother reportedly received a text and video showing Father receiving drugs and using them.

On April 28, 2020, the social worker interviewed Mother and L.F. by video call. Mother reported that Father had a history of drug-related arrests and incarceration. Mother said the current custody order permitted Father to have visitation once a week and every other weekend. She stopped allowing visitation after an ex-boyfriend sent her a video of her ex-boyfriend selling drugs to Father and Father using them. L.F. told the social worker he had everything he needed while at Mother's and Father's homes, and

3

felt safe visiting Father. He denied that either parent had neglected or abused him. L.F. said he had never seen drugs while with either parent, and had not noticed any signs that either parent was not sober, other than when Father fell over one time.

On May 1, 2020, Mother contacted CFS and said Father had said he was going to pick up the children for visitation. Mother was not willing to release them to Father because she strongly believed the children were not safe with him because of his drug use. She requested CFS to intervene. CFS contacted Father by phone. He said he was at Mother's home attempting to pick up the children for visitation. Father said the family court had awarded him visitation every Friday afternoon through Sunday afternoon. He said he had not seen the children since April 12, 2020, because Mother would not allow him to see them. Father admitted to a history of substance abuse but denied any current drug use. He said he and Mother used to use drugs together. Father stated he stopped after completing an outpatient program. Father agreed to drug test for CFS. He said he might test positive for marijuana but would test negative for all other substances. When confronted with the April 2020 video taken by Mother's ex-boyfriend, Father denied he was in the video. He agreed to leave the children with Mother until CFS interviewed Father in person and Father drug tested.

A few days later, CFS interviewed Father in person. He said he did not drug test on May 1, 2020, or on the day of his in-person interview. Father reported he and Mother had used methamphetamines but he had not done so after he and Mother ended their relationship in 2017. Father said the only substance he currently used was methadone,

4

which he took for back pain. He believed Mother was still using marijuana and other drugs. When shown the April 12, 2020 video, he stated he did not know the people in the video. He denied being in the video, but said that if he was in the video, the video was taken years ago. When the social worker noted "coronavirus" was mentioned in the video, he said he was sure he was not in the video.

CFS also interviewed paternal grandfather (PGF), who said Father had abused drugs in the past. PGF said he was unaware Father had any recent criminal charges or currently abused drugs. During Father's previous visitation, PGF and his wife had supervised the visitation at PGF's home.

On May 12, 2020, CFS called Mother. She denied any drug use, claiming she had not used methamphetamines for years. She said she spent most of her time in school and at home. CFS also interviewed MGM, who said she had no concerns regarding the children's well-being while they were in Mother's care. MGM said she was a nurse practitioner who worked with people addicted to drugs and knew the signs of drug use. MGM said she had not been concerned about Mother using drugs since 2017, when MGM began caring for the children. MGM permitted Mother to live with her and the children after Mother tested negative for drugs. Mother had been sober since then. MGM said the children were safe in her home and when with Mother. MGM acknowledged Mother occasionally smoked marijuana but only outside when the children were asleep and MGM was home. CFS reported Mother recently tested positive for marijuana.

5

On May 21, 2020, Mother reported that Father had not complied with CFS's request to stay away from her home while CFS was investigating. He had been coming over for visitation every Friday with law enforcement. CFS reported Father did not drug test when requested. CFS concluded Father's drug abuse put the children at risk of abuse and neglect. Because of the family court custody and visitation orders, CFS concluded Mother was unable to protect the children from Father. On June 3, 2020, CFS therefore obtained a detention warrant detaining the children from Father. CFS also visited Mother and the children at MGM's home. MGM acknowledged Mother had made bad choices in the past and abused drugs but was currently sober, attending college, and taking care of the children. Mother said she had stopped using marijuana and was willing to drug test.

CFS's criminal history search revealed that Mother had no criminal convictions but Father had a criminal history, which included convictions for petty theft in 2013, 2018, and 2019, vandalism in 2019, and disobeying a court order in 2019. Father was also charged in 2019 and 2020 with possession of unlawful paraphernalia.

A. *Detention*

On June 5, 2020, CFS filed a juvenile dependency petition under Welfare and Institutions Code section 300, subdivision (b)[1] (failure to protect) on behalf of the children. At the detention hearing on June 8, 2020, the juvenile court ordered the children detained from Father. The court ordered the children to remain in Mother's care,

---

[1] Unless otherwise noted, all statutory references are to the Welfare and Institutions Code.

with supervised visitation ordered for Father a minimum of once a week for two hours. The court authorized CFS to delegate supervision to relatives whom CFS assessed and determined were qualified to supervise. The court ordered pre-disposition services for Mother and Father, and ordered them to submit to random drug testing.

B. *Jurisdiction/Disposition*

CFS reported in its jurisdiction/disposition report filed in July 2020, that Mother admitted using heroin in 2011, relapsed in 2017, and then ended her relationship with Father. She recently tested negative for drugs, except marijuana, which she said she used for back pain and insomnia. Mother reported she and Father had engaged in two or three incidents of domestic violence in 2017.

Father reported using heroin two years earlier and currently taking Methadone and marijuana daily for migraines and back pain. He also took Lexapro. Father denied being addicted to any drugs. Father said the April 2020 video was edited by one of Mother's friends to make him look bad. He denied he was buying illegal drugs in the video but admitted he was trading items for marijuana and "wax." CFS reported that Mother demonstrated an ability to protect and care for the children. She was cooperative with CFS and compliant with the court's orders.

CFS filed a supplemental report on October 7, 2020, reporting that Father was arrested in July 2020 and released in late August 2020. After missing nine weeks of visitation during that time, Father resumed weekly visitation. CFS reported he had not made any progress on completing reunification services and had not appeared for any

drug testing, except two tests in June 2020, when he tested positive for Benzodiazepines. It was anticipated Mother would finish all of her court-ordered services in November 2020. The children reportedly were doing exceptionally well in her care. CFS recommended dismissing the case by approval packet upon Mother's completion of her family maintenance services.

During the contested jurisdiction/disposition hearing on October 7, 2020, the court dismissed the petition allegations regarding Mother, found true the allegations against Father of substance abuse and domestic violence, and took jurisdiction over the children under section 300, subdivision (b). The court further ordered the children removed from Father's custody and placed with Mother. The court ordered supervised visitation for Father a minimum of one time a week for two hours, with CFS given authority to liberalize visitation. The court also authorized relatives to supervise Father's visits if assessed and approved by CFS. The court cautioned Father that "since the children have not been removed from the mother the case could close at any time with family law orders if there's no longer a risk for her." The court authorized CFS "to dismiss with an approval packet and family law orders."

C. *Non-Appearance Review Hearing*

On December 14, 2020, the juvenile court entered a minute order for a non-appearance review hearing to "DISMISS AND DISCHARGE." Under "NOTICE," the minute order stated that each of the parties' attorneys were "NOTICED: 12/10/2020 EMAILED." The minute order summarized the current circumstances, stating that

8

Mother had completed her court-ordered service plan, which included a parenting class, a domestic violence program, and individual therapy. She also had randomly drug tested, with all negative test results. The children appeared healthy and happy in their home. Mother had made sure L.F. attended school. She also had transported the children to their weekly visits with Father. Mother had attended family therapy with L.F. and the therapist reported the interaction was positive.

The minute order further stated that because Mother had completed her court-ordered service plan, the CFS social worker recommended the case be dismissed. A copy of Mother's parenting certificate, domestic violence certificate, therapist report, drug test results, and family court orders were attached to and incorporated into the minute order.

The minute order made the following recommended findings and orders: "FINDINGS: NOTICE HAS BEEN GIVEN AS REQUIRED BY LAW. [¶] ORDERS: CHILD DISCHARGED AS A DEPENDENT OF JUVENILE COURT." The minute order was initialed by the juvenile court judge and by the court clerk, and dated January 15, 2021.

D. *Exit Orders*

On January 15, 2021, the juvenile court entered a final judgment dismissing dependency jurisdiction (form JV-200) and ancillary exit orders (forms JV-205 & 206), awarding Mother sole legal and physical custody of the children. Form JV-205, attached to the judgment, also signed by the court on January 15, 2021, ordered that Father "shall have supervised visitation [a] minimum [of] one (1) time per week for two (2) hours

9

every other week. Visitation shall be supervised by a professional monitor at father's expense." The court stated in form JV-206 that visitation was ordered supervised because Father had not completed drug abuse or alcohol treatment programs with random testing, a domestic violence treatment program, parenting classes, or individual counseling.

The January 15, 2021 judgment, with attached custody and visitation exit orders, stated that the juvenile court terminated jurisdiction over the children. Therefore all requests for modification or termination of the exit orders must be brought in family court. The judgment further stated that "[t]he parties were given notice and an opportunity to be heard as provided by the laws of the State of California." The judgment included a clerk's certificate of mailing the judgment, completed and signed by the court clerk on January 15, 2021.

### III.

### NOTICE OF APPEAL

CFS argues Father did not file a timely notice of appeal of either the October 7, 2020 jurisdiction/disposition order or the January 15, 2021 judgment and exit orders. We conclude Father's notice of appeal filed on February 23, 2021, was sufficient and timely as to the orders and judgment entered on January 15, 2021.

On February 4, 2021, Father, who was in pro. per., filed a notice of appeal incorrectly stating he was appealing a February 3, 2021 order terminating his parental rights under section 366.26. On February 23, 2021, Father filed a second notice of

10

appeal, appealing the December 14, 2020, minute order. Father's two notices of appeal filed in February 2021, do not provide timely notice of appeal of the October 7, 2020, order within 60 days (Cal. Rules of Court, rule 8.104(a)(1)),[2] and do not state Father was appealing the October 7, 2020, jurisdiction/disposition order. Therefore that order is final and cannot be challenged on appeal. (*In re Athena P.* (2002) 103 Cal.App.4th 617, 624 ["Failure to appeal from an appealable dispositional order waives any substantive challenge to the jurisdictional findings."]; *In re Meranda P.* (1997) 56 Cal.App.4th 1143, 1151 ["The mother did not file an appeal from any of these appealable orders, and the time within which to do so has long since passed."]; *In re Janee J.* (1999) 74 Cal.App.4th 198, 208.)

We further conclude Father's first notice of appeal filed on February 4, 2021, was improper because it stated Father was appealing a February 3, 2021, order terminating his parental rights. His parental rights were not terminated and there is no February 3, 2021, order in the record on appeal.

However, we deem Father's second notice of appeal, filed on February 23, 2021, timely and sufficient to appeal the exit orders and judgment entered and served on the parties on January 15, 2021, dismissing the dependency proceedings, granting Mother sole custody, and ordering supervised visitation. (Rule 8.104(a)(1) [notice of appeal must be filed no more than 60 days after the court clerk serves on appellant a copy of the judgment].) Although the February 23, 2021, notice of appeal stated that Father was

---

[2]  Undesignated rule references are to the California Rules of Court.

11

appealing the December 14, 2020, minute order, it is sufficiently clear that Father was appealing the January 15, 2021, orders and judgment of dismissal, which incorporated the December 14, 2020, minute order, signed by the court on January 15, 2021.

IV.

DISMISSAL OF DEPENDENCY JURISDICTION

Father contends the juvenile court violated his rights to notice and an opportunity to be heard before dismissal of the juvenile dependency proceedings and imposition of the custody and visitation exit orders. We conclude the record on appeal does not show Father was properly noticed of the proceedings dismissing jurisdiction and imposing the exit orders.

A. *Dismissal of Dependency Jurisdiction Under Section 364*

Section 364 governs review hearings for dependent children who have not been removed from one or both parents. (*In re Gabriel L.* (2009) 172 Cal.App.4th 644, 650; accord, *In re N.O.* (2019) 31 Cal.App.5th 899, 922.) "When proceeding under section 364, because the child is in placement with a parent, the court is not concerned with reunification, but with determining whether continued supervision is necessary in the family home. (§ 364, subd. (c).)" (*In re Gabriel L.*, *supra*, at p. 650.)

Section 364, subdivision (a) "requires a postdisposition review hearing only when the court has released the child to parental custody and found that continued supervision with family maintenance services is necessary to protect the child from the risk of serious harm. If services and ongoing supervision are not needed, section 364, subdivision (a), is

12

not implicated," and the juvenile court can terminate jurisdiction. (*In re Destiny D.* (2017) 15 Cal.App.5th 197, 207, fn. omitted.)

In the instant case, at the disposition hearing on October 7, 2020, the court ordered supervision of Father's visitation and set a six-month review hearing for April 2021, as required under section 364, to determine whether to dismiss jurisdiction. Section 364 states that the court shall advise the parties of the hearing date and all future hearings, and of their rights to be present and be represented by counsel. (§ 364, subd. (a).) At least 10 calendar days before the review hearing, CFS is required to file a supplemental report describing the services offered to the family and the progress made by the family in eliminating the conditions or factors requiring court supervision. (§ 364, subd. (b).) CFS is also required to make a recommendation regarding the necessity of continued supervision and provide all parties with a copy of the report at least 10 calendar days before the review hearing. (§ 364, subd. (b).) After conducting the review hearing and considering any evidence presented by the parties, the court shall determine, based on the totality of the evidence, whether continued supervision is necessary. The court is required to terminate jurisdiction unless CFS establishes that the conditions still exist which justified the initial assumption of jurisdiction. (§ 364, subd. (c); *In re N.O.*, *supra*, 31 Cal.App.5th at pp. 922-923.)

Here, the juvenile court did not require compliance with these statutory requirements because the court had authorized CFS to request dismissal of jurisdiction by "approval packet" and a non-appearance review hearing. Father argues that dismissal of

13

jurisdiction by this expedited method violated his right to notice and a meaningful opportunity to be heard before the court dismissed jurisdiction and imposed exit orders.

B. *The Right to Notice and an Opportunity to Be Heard*

"There is no doubt that due process guarantees apply to dependency proceedings." (*In re J.P.* (2014) 229 Cal.App.4th 108, 125; accord, *In re Dakota H.* (2005) 132 Cal.App.4th 212, 222; *Ingrid E. v. Superior Court* (1999) 75 Cal.App.4th 751, 757; *In re Crystal J.* (1993) 12 Cal.App.4th 407, 412 (*Crystal J.*) ["We of course would not dispute the proposition that parenting is a fundamental right the impairment of which requires strict adherence to procedural due process."].) Due process includes the right to notice and to be heard. (*Crystal J.*, *supra*, at p. 412 ["Procedural due process thus focuses upon the essential and fundamental elements of fairness of a procedure which would deprive the individual of important rights."].) "As stated in *Fuentes v. Shevin* (1972) 407 U.S. 67 at page 80: ' . . . the central meaning of procedural due process [is] clear: "Parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified." [Citations.] It is equally fundamental that the right to notice and an opportunity to be heard "must be granted at a meaningful time and in a meaningful manner." [Citation.]'" (*Crystal J.*, *supra*, at p. 412.)

"Due process requirements in the context of child dependency litigation have similarly focused principally on the right to a hearing and the right to notice. (*In re B.G.* (1974) 11 Cal.3d 679, 689 [failure to give mother notice of hearing was a deprivation of due process].) A meaningful hearing requires an opportunity to examine evidence and

14

cross-examine witnesses, and hence a failure to provide parents with a copy of the social worker's report, upon which the court will rely in coming to a decision, is a denial of due process. [Citation.] Where an investigative report is required prior to the making of a dependency decision, and it is *completely* omitted, due process may be implicated because a cornerstone of the evidentiary structure upon which both the court and parents are entitled to rely has been omitted. [Citation.]" (*Crystal J.*, *supra*, 12 Cal.App.4th at pp. 412-413.)

In *In re Michael W.* (1997) 54 Cal.App.4th 190 (*Michael W.*), the mother argued she was entitled to a hearing before the dependency court made its custody and visitation exit orders, terminated jurisdiction, and transferred the matter to family law court. The *Michael W.* court agreed. (*Id.* at p. 1992.) During dependency proceedings in *Michael W.*, the child was placed with his father and removed from his mother based on charges the mother physically abused the child. During a section 364 hearing to determine whether to terminate dependency jurisdiction, the mother requested an evidentiary hearing to demonstrate her progress. The court denied her request, awarded the father physical custody, ordered monitored visitation for the mother, and terminated jurisdiction. (*Michael W.*, *supra*, at p. 193.) A few days later the mother requested a hearing on visitation, which the juvenile court also denied on the ground there were no changed circumstances. When the juvenile court entered its final dismissal order, the court expanded its previous custody and visitation orders by granting the father not only

15

physical custody but also sole legal custody, with the mother granted only monitored visitation.  (*Id.* at p. 193.)

The court in *Michael W.* held:  "In this dependency case, the question is whether the noncustodial parent is entitled to an evidentiary hearing before the juvenile court decides custody and visitation issues ancillary to the termination of jurisdiction and the transfer of the case to the family law court.  We hold that, when requested, an evidentiary hearing must be held."  (*Michael W.*, *supra*, 54 Cal.App.4th at p. 192.)  *Michael W.* demonstrates that Father was entitled to notice and an opportunity to be heard before the court dismissed the dependency proceedings and imposed modified custody and visitation orders.

C.  *Judicial Notice of Approval Packet Procedures*

CFS argues that the juvenile court provided Father with sufficient notice and an opportunity to be heard by following local court authorized "approval packet" procedures, which included a non-appearance review hearing.  The juvenile court circumvented section 364 procedures by authorizing on October 7, 2020, CFS to request by "approval packet" dismissal of the juvenile dependency proceedings if Mother completed her court-ordered services.  Upon CFS making such a dismissal request, the court conducted a non-appearance review hearing on December 14, 2020, and without any other hearing or notice, entered a judgment and exit orders on January 15, 2021, dismissing jurisdiction and changing Father's custody and visitation.

16

CFS does not cite any legal authority authorizing the approval packet procedures implemented in this case. CFS, however, requests this court to take judicial notice of the following three documents which discuss the local non-appearance review procedures by "approval packet": (1) a chapter from a book or manual, discussing juvenile dependency non-appearance approval packets and procedures (Appendix A); (2) a 2006 San Bernardino County Juvenile Court memorandum discussing "approval packet" procedures (Appendix B); and (3) a February 2019, interagency memorandum discussing "approval packet" procedures (Appendix C). Judicial notice of these three items is denied.

CFS argues judicial notice of the three documents is proper under Evidence Code section 452, subdivision (c), as official acts of a government agency. Appendix A is not an official act. It is a chapter from a book or manual discussing juvenile dependency procedures. CFS does not provide the name of the publication. The copy attached to CFS's motion for judicial notice appears to be from "CFSPHB," which may refer to the San Bernardino County Child and Family Services Procedures Handbook. Judicial notice of a chapter from a book or manual normally is improper. (*Sierra Club v. Superior Court* (2013) 57 Cal.4th 157, 171; *Weitzenkorn v. Lesser* (1953) 40 Cal.2d 778, 787 ["The defendants urge that the court may take judicial notice of the contents of published books . . . . [¶] This would carry the doctrine of judicial notice far beyond its proper bounds."].) Even if informative, CFS has not established that Appendix A constitutes an official act.

17

Judicial notice of Appendices B and C appear to qualify as official acts because they are memoranda authored by judges, but judicial notice is denied on relevancy grounds. Those documents are dated April 17, 2006, and February 4, 2019. There is no showing that the procedures mentioned in the memoranda were current at the time of the instant proceedings.

D. *Insufficient Notice*

Although a juvenile court may have authority to implement expedited procedures for some matters that are not contested, the record on appeal does not show such procedures were properly implemented in the instant matter. Even if we were to take judicial notice of Appendices A, B, and C, which discuss the local approval packet procedures, there has been no showing Father was provided notice of the proceedings. The documents do not demonstrate Father received proper notice of the non-appearance review hearing on December 14, 2020, or notice that the court was considering modifying custody or visitation. Father therefore did not have a meaningful opportunity to object to the non-appearance review hearing and request an evidentiary hearing.

There is no proof of service of notice of the December 14, 2020, non-appearance hearing or "approval packet." The December 14, 2020, minute order statement that father's attorney received email notice on December 10, 2020, does not provide the email address used, and the alleged email notice was only four calendar days (two business days) before the non-appearance hearing on dismissal of jurisdiction. The minute order states notice was given as required by law but there is nothing in the record that confirms

that proper notice by email was provided, what the notice stated, or what documents, if any, were included with the notice.

Furthermore, nothing in the record shows that Father consented to service of notice by email.  (§ 212.5, subd. (a)(2)(B); Code of Civ. Proc., § 1010.6, subdivision (a)(2)(A)(ii).)  In addition, even if Father or his attorney received the December 14, 2020, minute order, there is no mention in the minute order that the juvenile court intended to impose exit orders changing custody, reducing Father's visitation, and requiring a professional visitation monitor paid by Father.

E.  *Exit Orders*

Section 362.4 authorizes a juvenile court to issue exit orders for visitation and custody when terminating dependency jurisdiction, and those orders remain in place even after jurisdiction is terminated.  (§ 362.4, subd. (a), (b); see § 302, subd. (d).)  A family court may later modify the section 362.4 exit orders, but only if it "finds that there has been a significant change of circumstances since the juvenile court issued the order and modification of the order is in the best interests of the child."  (§ 302, subd. (d); see Fam. Code, § 3021.)  Father argues the exit orders must be reversed because he did not receive proper notice and an opportunity to be heard before they were entered.  We agree.  The record on appeal does not show that Father or his attorney received such notice or any supporting evidence relied on by the court when changing custody and visitation.

CFS argues section 362.4 does not specifically state that a review hearing is required before dismissing dependency jurisdiction and imposing exit orders.

19

Furthermore, section 362.4 authorizes exit orders on the court's own motion. CFS therefore concludes notice and an opportunity to be heard were not required before the court issued the exit orders. We disagree. Before the court can modify or set aside any of its previous orders at a section 364 review hearing, prior notice must be given. (*In re Natasha A.* (1996) 42 Cal.App.4th 28, 36.)

The record on appeal does not show Father was provided with proper notice of the December 14, 2020, non-appearance review hearing to dismiss the proceedings or notice that, when dismissing the proceedings, the court would change custody and visitation. There was no mention of this in the December 14, 2020, minute order nor did Father receive any CFS report recommending exit orders changing custody or visitation. The record on appeal also does not provide any documentation disclosing why the juvenile court changed its previous visitation order granting Father minimum weekly supervised visitation or withdrew authorization that supervision could be provided by a qualifying relative rather than by a paid professional monitor. In addition, because the record on appeal provides no evidence of the juvenile court's reasoning for imposing the exit orders, this court is unable to discern the actual meaning of the confusing, inconsistent visitation order. Remand is therefore necessary to allow the juvenile court to modify the visitation order.

F. *Structural or Prejudicial Error*

We reject Father's argument that CFS's failure to provide him with notice and an opportunity to be heard constitutes structural error requiring automatic reversal. The

20

California Supreme Court has cautioned against using the structural error doctrine in dependency cases. (See *In re James F.* (2008) 42 Cal.4th 901, 915-916 ["[The] significant differences between criminal proceedings and dependency proceedings provide reason to question whether the structural error doctrine that has been established for certain errors in criminal proceedings should be imported wholesale, or unthinkingly, into the quite different context of dependency cases."].) Instead, the Supreme Court has held that, in the dependency context, "[i]f the outcome of a proceeding has not been affected, denial of a right to notice and a hearing may be deemed harmless and reversal is not required." (*Id.* at p. 918; see also *In re A.D.* (2011) 196 Cal.App.4th 1319, 1326-1327 [declining to apply structural error analysis to claim of failure to give notice of dependency proceeding]; *In re Sabrina H.* (2007) 149 Cal.App.4th 1403, 1419-1420 [same].)

This case is amenable to a harmless error analysis because a determination of prejudice can be determined without a speculative inquiry. (*In re James F.*, *supra*, 42 Cal.4th. at p. 915; accord *A.D.*, *supra*, 196 Cal.App.4th at p. 1327.) The Supreme Court has indicated that the "harmless error" test (*People v. Watson* (1956) 46 Cal .2d 818, 836) applies in dependency matters, and therefore a judgment in a dependency case should not be set aside unless it is reasonably probable the result would have been more favorable to the appealing party but for the error. (*In re Celine R.* (2003) 31 Cal.4th 45, 59-60.)

Father argues it is reasonably probable the juvenile court would not have decreased his visitation and mandated a paid professional monitor had the court provided

21

him with proper notice and an opportunity to be heard.  Applying the *Watson* harmless error test, we agree.  Even under the *Chapman* harmless error standard (*Chapman v. California* (1967) 386 U.S. 18, 24, we conclude the lack of notice constitutes prejudicial error.

Although the record demonstrates the juvenile court likely would have dismissed jurisdiction even if there had been proper notice and Father objected, it is reasonably probable that, had Father had notice and a meaningful opportunity to object to the exit orders, they would have been more favorable to Father.  It is probable that Father would have objected and requested an evidentiary hearing had he been aware the court was considering changing custody to sole custody for Mother, reducing his visitation, and requiring a professional visitation monitor to be paid by Father.  It is also probable that, at a minimum, the juvenile court would not have imposed the confusing, inconsistent visitation order changing Father's weekly supervised visitation to "supervised visitation one (1) time per week for two (2) hours every other week."  In addition, it is likely that, at Father's request, and as previously ordered, the court would have ordered an additional option of allowing an unpaid, qualifying relative to monitor supervision, instead of mandating supervision solely by a professional monitor paid by Father, who likely has limited financial resources.

Because we conclude the lack of notice and an opportunity to be heard on the exit orders was prejudicial, the order terminating jurisdiction (and its ancillary custody and visitation orders) must be reversed and the matter remanded to the juvenile court for a

22

properly noticed section 364 review hearing, along with notice and an opportunity to be heard if the juvenile court intends to change Father's custody and visitation.  (*Michael W.*, *supra*, 54 Cal.App.4th at p. 197.)

## V.

## DISPOSITION

The order terminating dependency jurisdiction and judgment entered on January 15, 2021, are reversed.  The ancillary exit orders also entered on January 15, 2021, are reversed, without prejudice.  The matter is remanded for a properly noticed section 364 review hearing and for Father to be heard should the court intend to change his custody and visitation.

CODRINGTON
J.

We concur:

MILLER
Acting P. J.

RAPHAEL
J.

23

Filed 11/10/21

CERTIFIED FOR PUBLICATION
COURT OF APPEAL -- STATE OF CALIFORNIA
FOURTH DISTRICT
DIVISION TWO


ORDER


In re R.F. et al., Persons Coming Under          E076526
the Juvenile Court Law.
_____          (Super. Ct. No. J285440 &
                                                            J285441)

SAN BERNARDINO COUNTY
CHILDREN AND FAMILY SERVICES,                    ORDER CERTIFYING
   Plaintiff and Respondent,                     OPINION FOR PUBLICATION
   v.
B.F.,
   Defendant and Appellant.

_____


THE COURT

     Requests having been made to this court pursuant to California Rules of Court, rule 8.1120(a), for publication of a nonpublished opinion heretofore filed in the above matter on October 29, 2021, and it appearing that the opinion meets the standards for publication as specified in California Rules of Court, rule 8.1105(c),

     IT IS ORDERED that said opinion be certified for publication pursuant to California Rules of Court, rule 8.1105(b).  The opinion filed in this matter on October 29, 2021, is certified for publication.

     CERTIFIED FOR PUBLICATION


                                                        CODRINGTON____
                                                                      J.

We concur:

MILLER_____
       Acting P. J.

RAPHAEL_____
       J.


1