Filed 7/27/23  In re K.M. CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re K.M., a Person Coming Under the Juvenile Court Law. | B325978 (Los Angeles County Super. Ct. No. 20CCJP02157A) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>MARK M.,<br><br>        Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Kristen Byrdsong, Judge Pro Tempore. Affirmed.

Benjamin Ekenes, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Sally Son, Senior Deputy County Counsel, for Plaintiff and Respondent.

\* \* \* \* \* \*

This is the third appeal by Mark. M. (father) in this juvenile dependency case. This appeal challenges the juvenile court's orders terminating dependency jurisdiction over his daughter, K.M., and issuing an exit order that granted K.P. (mother) sole custody and limited father's visitation.[1] His challenges to these orders ignore the record or ignore the law, and accordingly lack merit. We affirm.

### FACTS AND PROCEDURAL BACKGROUND

Because we are issuing our opinion in father's second appeal simultaneously with this opinion, we hereby incorporate Sections I through IV (on pages 3 through 10) of the Facts and Procedural Background section from *K.M. II*, and will not restate them here; we will number the sections herein as if they are a

---

[1] Father's second appeal—which we consider simultaneously with this one—challenges the juvenile court's orders *retaining* dependency jurisdiction. (*In re K.M.* (July 27, 2023, B321344) [nonpub. opn.] (*K.M. II*).) Thus, father is taking the fundamentally inconsistent position that the same court in the same case erred in retaining *and* terminating jurisdiction over the same child.

2

continuation of the Facts and Procedural Background section in *K.M. II.*

## V. Father's Conduct Giving Rise to Termination of Jurisdiction and Exit Order

### A. *The Department recommends terminating jurisdiction*

In advance of the progress hearing the juvenile court had set for October 13, 2022, the Los Angeles Department of Children and Family Services (the Department) filed a last minute information report. In that report, the Department recommended that the juvenile court terminate jurisdiction, give mother sole legal and sole physical custody of K.M., and grant father biweekly monitored visits. This recommendation rested in part on the Department's view that father's "relationship" with K.M. was "emotionally unhealthy." Despite being ordered not to yell at or harass K.M., father continued to do so: K.M. reported that father "raised his voice" at her, called her "'bad names,'" and then proceeded to say "horrible things about" mother; father abruptly ended a visit due to K.M.'s "'nasty ass attitude,'" which he blamed on mother and the Department; father antagonized K.M. for "not calling him daily" (even though father was granted only weekly telephonic visits); and father called K.M.'s school to pull K.M. out of classes for an in-person or telephonic visit. Even when father was not yelling at or harassing K.M., he was always "'mad'" and "angry" during his visits with K.M. Father's conduct made K.M. "extremely distraught." The Department observed that father's "angry outbursts" were related to his need to "control" every situation. Father also had not finished his court-ordered domestic violence class or enrolled in conjoint counseling with K.M.

**B.** *Mother files a section 388 petition*

Echoing the Department's recommendation, mother filed a petition under Welfare and Institutions Code section 388[2] one week later asking the juvenile court to terminate dependency jurisdiction, give mother sole physical and legal custody of K.M. and limit father's educational rights, and limit father to a two-hour monitored visit every other week. Mother alleged, consistent with the Department's prior reports, that K.M. "dreads contact" with father, "has anxiety when she is required to visit," and is "humiliated" by his "harassment of the school."

**C.** *The juvenile court holds a progress hearing*

The juvenile court convened the progress hearing on October 13, 2022.

Because the Department's last minute information report "substantiat[ed] the same claims" made by mother in her section 388 petition, the court found it appropriate to "go forward" with a hearing on mother's petition. The court also advanced the section 364 review hearing set for November 30, 2022 and vacated it. Father objected, and argued that (1) the court was procedurally required to set a noticed, contested hearing on mother's petition, and (2) he was entitled to call K.M. as a witness. The court rejected both arguments. As to the timing of the hearing, the court found that (1) "exigency"—namely, "the impact on [K.M.'s] mental health"—necessitated hearing mother's section 388 petition that day, and (2) a "detriment finding" could be made by the court "at any time." As to K.M. testifying, the court found that (1) it would be "detrimental" to force her to testify, and (2) her testimony was also not "necessary."

---

[2]     All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

4

The juvenile court granted mother's section 388 petition. The court observed that father's "behavior is out of control" and that he was "terrorizing" K.M. (Father's conduct during the hearing seemingly confirmed the court's observations, as father twice "hung up" on the court during the remote hearing.) The court found that father's "out of control and domestic violence perpetrator behavior" constituted a change in circumstances. The court further found that it was in K.M.'s "best interest" to grant the petition.

The court thus issued (1) an order terminating jurisdiction over K.M., and (2) an exit order granting mother sole legal and physical custody of K.M., granting mother exclusive educational rights, and according father one hour of monitored visitation per month because "father's actions" caused the court to find it would be "detrimental for him to have any more visitation" than that. However, the court retained jurisdiction pending "receipt of the" exit order, and the exit order (Judicial Council form JV-200) directed the "clerk of the juvenile court" "to transmit th[e] order within 10 calendar days to the clerk" of the family court.

**D.** *The juvenile court stays or vacates its orders four days later*

After further reflecting on father's procedural objections and ostensibly finding them to be well-taken, the juvenile court stayed or "vacated" its termination order and its exit order on October 17, 2022. The court simultaneously set a contested hearing on mother's section 388 petition for November 17, 2022 and advanced to that same date the section 364 review hearing previously set for November 30, 2022. All parties received notice of the November 17, 2022 hearing. The court also made a

5

"temporary detriment finding" to suspend father's visits with K.M. pending that subsequent hearing.

### E. *The juvenile court holds a contested hearing on November 17, 2022*

At the combined review hearing and evidentiary hearing on mother's section 388 petition, the court admitted a new last minute information report in which the Department relayed that father's "anger is getting worse with each visit" with K.M. and that father "continues to escalate his anger," so much so that K.M. "does not want to visit father 'at all'" because he is "always" "mad" and "yelling" at her "for no reason." Father also "demonstrated escalated irate behaviors" with the Department's staff by calling every secretary's extension between 10 and 15 times every day, raising his voice, using profanity, and even making ominous threats.[3]

Father took the stand to testify, but provided only a few minutes of testimony before the juvenile court ordered him escorted from the courtroom following a "threatening and aggressive and inappropriate" "outburst" while on the stand.

The court granted mother's section 388 petition. The court found changed circumstances—namely, father "repeatedly" showing that he "harass[es]" and is "emotionally abusive" toward K.M., as well as toward "school officials" and "Department staff," and that he has "no accountability or responsibility for his

---

[3] Two social workers requested a restraining order against father for his harassing and intimidating conduct, including his threatening statements like "This is not over yet . . ." and "God forbid I see you in person." After issuing a temporary restraining order and holding a hearing, the juvenile court granted the restraining order.

6

actions." The court also found it in the "best interest" of K.M. for K.M. to have *no* unmonitored contact with father given his "abusive and emotionally damaging behaviors." The court terminated jurisdiction pending an exit order being finalized at the next hearing scheduled for December 14, 2022.

**F.     *Father moves to vacate the juvenile court's November 17, 2022 orders***

On December 12, 2022, father filed a motion to vacate the juvenile court's orders on the ground that the court already terminated jurisdiction back on October 13, 2022 and therefore was divested of the ability to make any further findings or orders. The court denied father's motion at the December 14 hearing.

**G.     *The juvenile court's termination and exit orders take effect***

The court lifted its stay on the termination order on December 15, 2022, the date the exit order was finalized *by the court* (because *the parties* could not agree on the terms at the December 14 hearing). The exit order awarded mother sole legal custody and sole physical custody of K.M., and granted father one monitored visit per month "in a therapeutic setting in conjoint counseling when [the] therapist" to be selected by mother "determines it is appropriate."[4]

**VI.   Father Appeals**

Father appealed from the juvenile court's "findings and orders" made at the October 13, November 17, December 14, and December 15, 2022 hearings.

---

4      The juvenile court also extended mother's restraining order against father by two additional years, but that ruling is not challenged on appeal.

7

## DISCUSSION

In this appeal, father raises what boils down to four arguments.[5] Specifically, he argues that (1) the juvenile court violated the dependency statutes and his constitutional right to due process by issuing its order terminating jurisdiction and its exit order without first setting the matter for a properly noticed contested hearing; (2) the court violated the dependency statutes and his constitutional right to due process by refusing to allow K.M. to testify; (3) the court removed K.M. from his custody without making valid removal findings; and (4) the court's exit order improperly delegates to K.M.'s therapist the authority to determine whether father could visit K.M.

---

[5] Father makes two more arguments. He makes a threshold argument that we must vacate all orders at issue in this appeal if we find his second appeal (*K.M. II*) has merit; because father's second appeal is meritless, we necessarily reject that argument. He makes the concluding argument that we must remand this case to a different bench officer if we find further proceedings are warranted; because we are affirming, we necessarily reject this argument as well.

Father filed his reply brief late, and notwithstanding our rejection of his request for an extension of time to file that brief. Given that father's counsel also filed the reply brief in the companion appeal late, there appears to be a pattern of disregarding this Court's deadlines. We would be well within our authority to strike the late-filed reply brief in this case. However, to avoid punishing father for his counsel's transgressions, we allowed the reply brief to be filed, have considered its arguments on their merits, and find them to lack merit for the reasons set forth in the text.

## I.    Was Father Denied Prior Notice?

Father argues that the juvenile court's December 2022 orders terminating dependency jurisdiction over K.M. and the accompanying exit order are invalid because the court—on October 13, 2022—violated father's statutory rights and right to due process.  Father's argument has two steps: (1) a parent has a right to prior notice before a juvenile court conducts a contested hearing in support of a section 388 petition or any section 364 review hearing, and (2) father was denied those rights when the juvenile court held a contested hearing on October 13, 2022 regarding mother's petition and held a review hearing without giving father prior notice of its intention to conduct those hearings on that day.  These are arguments involving questions of constitutional law or the application of constitutional or statutory law to undisputed facts; as such, our review is de novo. (*In re Taylor* (2015) 60 Cal.4th 1019, 1035 (*Taylor*) [constitutional questions]; *Aquila, Inc. v. Superior Court* (2007) 148 Cal.App.4th 556, 568 [constitutional questions of notice]; *People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 432 (*Lockyer*) [application of law to undisputed facts]; *In re R.C.* (2011) 196 Cal.App.4th 741, 748 (*R.C.*) [same].)

The first premise of father's argument—namely, that father has the right to prior notice—is correct.  A party to a juvenile dependency case may file a petition under section 388 seeking to "change, modify, or set aside" an existing juvenile court order or to "terminate the jurisdiction of the court."  (§ 388, subd. (a)(1).) Where, as is uncontested with respect to mother's petition, a section 388 petition sets forth a prima facie case for a relief, the court must "order that a hearing be held" and "shall give prior notice" of that hearing to all affected parties, including the

9

parents. (§§ 388, subd. (d), 386, 297, subd. (c)(1); Cal. Rules of Court, rule 5.570(e) & (g)(2); accord, §§ 302, subd. (b), 385, 386; see also *In re Kelley L.* (1998) 64 Cal.App.4th 1279, 1284 (*Kelley L.*) ["notice to a parent is required for hearings pursuant to section 388"]; *In re Andrew A.* (2010) 183 Cal.App.4th 1518, 1528 [same]; *Nickolas F. v. Superior Court* (2006) 144 Cal.App.4th 92, 111-112 & fn. 16 [same].) Where a juvenile court is exerting jurisdiction over a child that remains in the home of a parent,[6] the court is required (1) to hold periodic review hearings under section 364 to assess whether "conditions still exist which would justify initial assumption of [dependency] jurisdiction" or are "likely to exist if [juvenile court] supervision is withdrawn" (§ 364, subds. (a) & (c)); and, if it determines jurisdiction is no longer justified, (2) to issue an exit order fixing the terms of custody and visitation and transferring the case to the family court (§ 362.4; *In re T.H.* (2010) 190 Cal.App.4th 1119, 1122-1123; *In re Michael W.* (1997) 54 Cal.App.4th 190, 194-195 (*Michael W.*)). Because a party is entitled to present evidence at a hearing preceding an exit order and because an exit order may be entered at a section 364 review hearing, the parties have a right to present evidence—and a concomitant right to prior notice of a section 364 review hearing—before such a hearing may be conducted. (*Michael W.*, at pp. 194-195; *In re R.F.* (2021) 71 Cal.App.5th 459, 471, 473 (*R.F.*); *Kelley L.*, at pp. 1284-1285 & fn. 9.) Due process also guarantees parents in dependency proceedings the right to prior notice. (*In re Mia M.* (2022) 75

---

6    As we discussed in *K.M. II*, given the lack of clarity as to whether section 364 or section 361.2 applies to the circumstances here, we have assumed that section 364—and its standard that is more favorable to father—applies here.

10

Cal.App.5th 792, 807 ["'due process requires parents be given notice that is reasonably calculated to advise them an action is pending and afford them an opportunity to defend'"]; *R.F.*, at p. 470 [due process in dependency litigation is "'focused principally on the right to a hearing and the right to notice'"].)

However, the second premise of father's argument— namely, that father was denied his statutory and constitutional rights to prior notice—is incorrect. Although the juvenile court did not give father prior notice before it conducted—on October 13, 2022—a contested hearing on mother's section 388 petition and advanced the section 364 review hearing, the court corrected its misstep by subsequently staying or vacating the orders made at that hearing and thereafter conducting—on November 17, 2022—a properly noticed contested section 388 petition hearing and section 364 review hearing. Indeed, father does not deny that the prior notice given for the November 17, 2022 hearing was proper, or that he actively participated in that hearing by presenting evidence.[7] Thus, father was not denied his right to prior notice. And even if we assume that he was denied that right, the court's subsequent conduct in correcting its misstep renders that misstep harmless under any standard: There is zero possibility that father would have obtained a more favorable result if he had been given prior notice because we *know* that, after a subsequent hearing with proper prior notice and where father put on evidence, the juvenile court came to the same

_____

[7]     The Department urges that the juvenile court's subsequent acts render father's appeal moot. We exercise our "'inherent discretion'" to entertain father's ostensibly moot challenge to the October 13, 2022 orders. (*In re D.P.* (2023) 14 Cal.5th 266, 276, 282, 285-286.)

11

conclusion—namely, that father's anger and control issues warranted the termination of dependency jurisdiction and an exit order placing K.M. in mother's sole custody. Father's entreaty that we view any due process misstep—even one that was later remedied—to be reversible per se defies common sense as well as binding Supreme Court precedent. (*In re Celine R.* (2003) 31 Cal.4th 45, 59-60 [harmless error analysis applies in dependency cases]; *In re James F.* (2008) 42 Cal.4th 901, 915-916, 918 [same]; *R.F.*, *supra*, 71 Cal.App.5th at p. 474 [same]; *In re Christopher L.* (2022) 12 Cal.5th 1063, 1081 [automatic reversal rule should not be applied to "errors that do not invariably lead to fundamental unfairness" because doing so "would exact a particularly steep cost"].)

Father resists our conclusion with what boils down to three arguments.

First, father argues that the juvenile court did *not* correct its misstep because the court's October 17, 2022 order staying or vacating the termination and exit orders is itself void because the court on October 13, 2022 terminated its own jurisdiction and thereby deprived itself of the authority to issue any further orders in the case.

Father is wrong. To be sure, after a dependency proceeding has been terminated, a juvenile court no longer has jurisdiction and may not take any further action in the proceeding. (*In re A.S.* (2009) 174 Cal.App.4th 1511, 1514-1515; *In re Sarah M.* (1991) 233 Cal.App.3d 1486, 1504, overruled on other grounds in *In re Chantal S.* (1996) 13 Cal.4th 196, 204 (*Chantal S.*).) According to father, the juvenile court's issuance of the exit order on October 13, 2022 *instantaneously* deprived the court of all jurisdiction. This is incorrect for a few reasons.

12

To begin, a dependency proceeding of the type here is not terminated until the exit order is transmitted to the clerk of the family court within a 10-day window (§ 362.4, subd. (b); Cal. Rules of Court, rule 5.700(b)(2)), and we can presume that the juvenile court fulfilled its official duty to transmit that order by the end of that window (Evid. Code, § 664). The court's October 17, 2022 order was entered only four days into that 10-day window, and father—as the party with the burden of proof on appeal—has pointed to nothing in the record showing that the exit order here was transmitted to the family court prior to October 17, 2022. (See generally *People v. Hopson* (2017) 3 Cal.5th 424, 461 (dis. opn. of Cantil-Sakauye, C.J.) [noting "most fundamental rule of appellate law" that appellant bears the burden of showing error].) By not objecting to the court conducting the November 17, 2022 contested hearing (and by actively participating in that hearing), father's contemporaneous conduct reaffirms that the October 13, 2022 order had *not* been transmitted to the family court prior to October 17, 2022, and that the juvenile court still had jurisdiction over this case. There is also no evidence that the family court ever accepted jurisdiction.[8]

Next, father's contention at oral argument that the court's October 17, 2022 order staying or vacating the termination and exit orders was ineffectual because it was oral—and that this oral order was not memorialized in a minute order or a written order

---

[8] At oral argument, father for the first time asked this court to grant him the opportunity to obtain discovery regarding the family court's action vis-à-vis this transfer. We recognize our authority to hear any such newly gathered evidence (Code of Civ. Proc., § 909), and exercise our discretion to decline this request.

using identical "stayed" or "vacated" language—lacks merit. The court did issue a minute order, and that order states that K.M. "remains a dependent of the Court" and sets a new contested hearing on mother's section 388 petition. This order necessarily implies that the juvenile court vacated the prior order (because there would be no other way in which K.M. would remain a dependent) and confirms what the court orally announced to all parties at the October 17, 2022 hearing.

Further, had the juvenile court's jurisdiction over K.M. terminated *instantaneously*, K.M. would be in a jurisdictional limbo during the 10-day window pending transmission of the exit order to the family court. We decline to read the dependency statutes to create such a limbo.

Finally, as noted above, even if the juvenile court's October 17, 2022 order was void, the November 17, 2022 hearing still establishes that the deficiency in notice prior to the October 13, 2022 hearing was harmless.

Second, father argues that he had no "meaningful notice" of *the basis* for the juvenile court's rulings because the notice of hearing served by the Department for the October 13, 2022 progress hearing did not identify the Department's recommendations that jurisdiction be terminated and mother be granted sole custody of K.M. Again, father is wrong. Not only does this argument ignore the juvenile court's orders staying or vacating the October 13, 2022 orders, but this argument completely ignores that the Department—in last minute information reports filed in advance of *both* the October 13 and November 17, 2022 hearings—set forth its recommendation to terminate jurisdiction and grant father only limited visitation, along with the detailed reasons for that recommendation.

14

Third, father argues that the juvenile court was not permitted to rely on exigent circumstances to advance the review hearing and consider mother's petition on October 13, 2022 without prior notice. But the court's reasoning expediting those matters is irrelevant because, as noted above, the court subsequently stayed or vacated those orders four days later, and made an interim finding suspending father's visits until a properly noticed hearing could be conducted.

## II. Did the Juvenile Court Abuse Its Discretion in Not Allowing Father to Call K.M. as a Witness?

Although parents have a due process right to cross-examine and confront witnesses during dependency proceedings (*In re Amy M.* (1991) 232 Cal.App.3d 849, 867-868 (*Amy M.*)), that right is less than "'full-fledged'" (*J.H. v. Superior Court* (2018) 20 Cal.App.5th 530, 536); a juvenile court retains discretion to preclude live testimony from a child witness where "[(1)] the child's desires and wishes can be directly presented without live testimony, [(2)] where the issues to be resolved would not be materially affected by the child's testimony, and [(3)] where it is shown that the child would be psychologically damaged by being required to testify" (*In re Jennifer J.* (1992) 8 Cal.App.4th 1080, 1089 (*Jennifer J.*); see also *In re Daniela G.* (2018) 23 Cal.App.5th 1083, 1086-1087 (*Daniela G.*); *In re Juan H.* (1992) 11 Cal.App.4th 169, 172-173; cf. *Amy M.*, at pp. 863-865 [error to exclude child witness where there was no substitute for his material testimony on disputed issue]). We review a juvenile court's exclusion of a child's testimony for abuse of discretion, and review any subsidiary factual findings for substantial evidence. (*Daniela G.*, at p. 1090; *Jennifer J.*, at p. 1088.)

15

The juvenile court did not abuse its discretion in denying father's request to call K.M. as a witness.

To begin, to the extent father urges error because the juvenile court did not consider having K.M. testify in chambers, father has forfeited that argument by not asking the juvenile court for such an accommodation. (*Daniela G., supra*, 23 Cal.App.5th at p. 1090.) Father responds that his forfeiture should be excused because he would have requested that procedure "in writing" had he been given prior notice that the court would consider terminating jurisdiction at the October 13, 2022 hearing, but an oral request would have sufficed and, more to the point, father did not ask for in-chambers testimony at the subsequent hearing on November 17, 2022, for which father *was* given prior notice.

The juvenile court's order denying father's request to call K.M. as a witness was not an abuse of discretion in any event because substantial evidence supports the findings that (1) K.M.'s wishes were presented, often verbatim, in the Department's reports (cf. *Amy M., supra*, 232 Cal.App.3d at pp. 865-866 [error not to allow testimony where no reports were based on child's own articulation of their views]); (2) K.M.'s testimony would not materially affect the pending issues (*In re Jacob P.* (2007) 157 Cal.App.4th 819, 832 [child's wishes "cannot be dispositive"]; *In re Patrick S.* (2013) 218 Cal.App.4th 1254, 1265 [same, "even when that child is a teenager"]); and (3) K.M. would be "further traumatize[d]" from testifying considering father's uncontested emotional abuse against her.

Father responds with several contentions that reduce to a single argument. He argues that he was entitled to elicit testimony from K.M. "firsthand" to rebut the "self-serving"

16

characterizations in mother's petition that father's behavior was harmful to K.M.'s "mental health" and to uncover that K.M. had been "coach[ed]." Father ignores that there was already ample evidence in the Department's reports—and exhibited by father himself in the courtroom—substantiating the claims in mother's petition that father's fixation on control and unchecked anger was damaging to K.M.'s well-being. What is more, the juvenile court ordered the Department to interview K.M. in a neutral location to root out any inappropriate coaching; there was none.

## III. Did the Court Improperly Remove K.M.?

Father argues that K.M. was removed from him on October 13, 2022—when the juvenile court initially granted mother's section 388 petition, terminated jurisdiction, and issued an exit order placing K.M. in mother's sole custody—without first making removal findings. To the extent this issue involves the interpretation of statutes or the application of law to undisputed facts, our review is de novo (*Lockyer*, *supra*, 24 Cal.4th at p. 432; *R.C.*, *supra*, 196 Cal.App.4th at p. 748); to the extent it involves the evaluation of factual findings, we review only for substantial evidence (*In re R.T.* (2017) 3 Cal.5th 622, 633). Father's argument lacks merit for two reasons.

First, although a juvenile court may not remove a child from her parent unless the court has found, by clear and convincing evidence (and as pertinent here), that "[t]here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the [child] if the [child] were returned home" (§ 361, subd. (c)(1)),[9] this standard

_____

[9] Section 361, subdivision (c)(1), also requires a finding that there are no reasonable means short of removal that would

17

does not apply when a court is deciding whether to terminate its jurisdiction at a section 364 review hearing (or issuing an exit order). (*In re J.M.* (2023) 89 Cal.App.5th 95, 113-115 (*J.M.*) [so holding, and rejecting an argument identical to father's].) Although *J.M.* was decided weeks before father filed his opening brief and months before he filed his late-filed reply brief and notice of additional authority, father nowhere cites this on-point but adverse precedent.

Second, even if a court were required to make a removal finding when issuing an exit order upon terminating jurisdiction, the juvenile court here *made* that finding. On October 13, 2022, the court explicitly "ma[de] a detriment finding" that warranted limiting father to one hour of visitation per month, and on October 17, 2022, made a further "temporary detriment finding" before reinstating its original order on November 17, 2022. A finding that a child would suffer "detriment" if placed with a parent is equivalent to a finding that "[t]here is or would be a substantial danger" to the child's health and well-being within the meaning of the removal statute. (*J.M.*, *supra*, 89 Cal.App.5th at p. 113 [treating the two as interchangeable].) Although the juvenile court did not expressly make its finding "by clear and convincing evidence," we may infer that the court is aware of the requirement to do so and made its finding by that standard of proof (e.g., *People v. Asghedom* (2015) 243 Cal.App.4th 718, 725 [appellate courts must infer trial court applied proper standard of proof absent evidence to contrary]), and we conclude that any failure to do so is harmless beyond a reasonable doubt in light of

---

protect the child's health, but father does not fault the juvenile court for not making that finding.

18

the overwhelming evidence of father's abusive and controlling behavior.

## IV.   Was the Therapist Improperly Delegated Judicial Power Over Visitation?

Father argues that the exit order must be reversed because the juvenile court improperly delegated power over his visitation with K.M. to K.M.'s therapist.

A visitation order that actually or effectively allows a third party—including social workers, therapists, or the child herself—to decide whether visitation occurs at all is impermissible because it erroneously delegates the *judicial* power to decide visitation.  (*In re S.H.* (2003) 111 Cal.App.4th 310, 317-319; *In re Julie M.* (1999) 69 Cal.App.4th 41, 48-49; *In re Korbin Z.* (2016) 3 Cal.App.5th 511, 516-517; *In re Hunter S.* (2006) 142 Cal.App.4th 1497, 1504-1508.)  However, a juvenile court may delegate the responsibility to manage details of visitation, such as the time, place, and manner of the visit.  (*In re Moriah T.* (1994) 23 Cal.App.4th 1367, 1374-1376.)  Although we independently review the legal question whether a juvenile court has unconstitutionally delegated its judicial power (see *Taylor*, *supra*, 60 Cal.4th at p. 1035 [constitutional questions reviewed de novo]), we review orders setting the terms of visitation for an abuse of discretion (*In re Brittany C.* (2011) 191 Cal.App.4th 1343, 1356; *Bridget A. v. Superior Court* (2007) 148 Cal.App.4th 285, 300).

The juvenile court did not impermissibly delegate its authority to fix parental visitation.  The exit order explicitly fixed the frequency of visits when it specified that father would visit K.M. once per month "in a therapeutic setting in conjoint counseling when [K.M.'s] therapist determines it is appropriate."

19

The only aspect of visitation delegated to the therapist was *when* the court's order authorizing visitation takes effect. This more limited delegation is not impermissible. In *Chantal S.*, *supra*, 13 Cal.4th at pp. 213-215, our Supreme court upheld as valid—and not an impermissible delegation—a juvenile court order that predicated visitation upon a therapist's finding that the parent has made "satisfactory progress." As in *Chantal S.*, the juvenile court made visitation contingent upon the therapist's determination of when such visits would be "appropriate" (no doubt due to the progress of both father and K.M. in their therapy); indeed, making visitation contingent upon a therapist's finding of propriety ostensibly grants father a "windfall" because, just like in *Chantal S.*, the court here "would have been within its discretion to simply deny father any visitation." (*Id.*, at p. 214; *In re C.S.* (2022) 80 Cal.App.5th 631, 640-641 [no improper delegation where "therapist's only role . . . was to decide when it was safe for visits to begin"]; cf. *In re Donnovan J.* (1997) 58 Cal.App.4th 1474, 1477-1478 [improper delegation where order "neither requires that the therapists manage visitation . . . nor sets criteria . . . to inform the therapists when visitation is appropriate"].)

## DISPOSITION

The orders are affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.

HOFFSTADT


We concur:


_____, P. J.

LUI


_____, J.

CHAVEZ

21