Filed 4/9/26  In re M.M. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| In re M.M. et al., Persons Coming Under the Juvenile Court Law. | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>MARKELLE M.,<br><br>    Defendant and Appellant. | E086494<br><br>(Super.Ct.No. DPSW2400130)<br><br>OPINION |

APPEAL from the Superior Court of Riverside County.  Sean Crandell, Judge.

Reversed and remanded.

Suzanne Davidson, under appointment by the Court of Appeal, for Defendant and

Appellant.

Minh C. Tran, County Counsel, Jamila T. Pernell and Prabhath Shettigar, Deputy

County Counsel, for Plaintiff and Respondent.

1

At the contested Welfare and Institutions Code[1] section 366.21, subdivision (e), six-month review hearing, the juvenile court terminated dependency jurisdiction over M.M.[2] Markelle M. (father) appeals, contending the court erred in accepting the Riverside County Department of Public Social Services' (the Department) changed recommendation without giving him the opportunity to present any evidence to challenge it. He argues the denial of his right to set a contested hearing and to present evidence violated his due process rights. We agree and reverse.

## I. PROCEDURAL BACKGROUND AND FACTS

Father and R.P. (mother) have four children: Ar.M. (born 2016), R.M.M. (born 2018), R.A.M. (born 2020) and M.M. (born 2022).[3]

### A. Dependency proceedings in Los Angeles County

Mother, K.T-P., and V.V. came to the attention of the Los Angeles County Child Protective Services (LACPS) in April 2016 due to a domestic violence incident between mother and father (stepfather to K.T-P. and V.V.). The Los Angeles County Juvenile Court ordered father to leave the family home, and the children were returned to mother's custody under family maintenance services. Subsequently, Ar.M., R.M.M., and R.A.M.

---

[1] Further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[2] Initially, M.M. was identified as A.M.; however, on May 7, 2024, the juvenile court acknowledged his legal name as M.M. We will do the same.

[3] M.M. has two half siblings, mother's older children K.T-P. (born 2010) and V.V. (born 2012), who are not parties to this appeal.

(M.M.'s siblings) were born, added to the petition, and all the children were removed from mother's custody due to safety concerns surrounding an extensive history of domestic violence involving mother and father. By 2021, the children were returned to mother's custody and family maintenance services were ordered. However, in September 2023, LACPS reported mother and her children's whereabouts were unknown; warrants were issued.

## B. Dependency proceedings in Riverside County

### 1. Detention

On April 12, 2024, the Riverside County Department of Public Social Services (the Department) received an immediate response referral regarding allegations of general neglect as to M.M. M.M. resided with mother and his five siblings (who were dependents of LACPS), and law enforcement served mother with an arrest warrant for being on the run from LACPS. Mother had been living in Arizona for the past three years and Los Angeles before then. She acknowledged domestic violence involving father, claiming he was the aggressor who continued to violate the restraining order against him. Mother questioned why LACPS had custody removal orders[4] when she completed her services and the children were returned to her care. Father was incarcerated in San Bernardino County for robbery and intent to terrorize.

On April 16, 2024, the Department initiated dependency proceedings as to M.M. (born 2022) alleging he came within the jurisdiction of the juvenile court under section

---

[4] The custody removal orders were required because mother allowed father into the home despite court/restraining orders.

300, subdivisions (b)(1) (failure to protect), (g) (no provision for support) and (j) (abuse of siblings). Given the family's flight risk, he was placed in protective custody. The juvenile court detained M.M., ordered reunification services, supervised visitation for both parents at a minimum of two times per week, separately due to their history of domestic violence. Father was found to be presumed father of M.M.

    2. *Jurisdiction/Disposition*

In its jurisdiction/disposition report filed May 2, 2024, the Department recommended the juvenile court find the allegations in its petition true and order family reunification services for the parents. The paternal grandmother was being assessed for placement since M.M.'s siblings were placed with her. Father's incarceration prevented visitation; however, mother visited M.M. with some issues. Due to her history of physically assaulting social services staff, the Department requested the presence of special investigations unit officers. During her first visit, she refused to drug test, snatched the child from the social worker's hands, ran to the visitation room, slammed the door, and would not let anyone enter the room.

Mother's case plan included individual counseling, domestic violence, anger management, parenting education, and substance abuse services. Father's case plan included individual counseling, domestic violence, anger management, parenting education, and substance abuse services. Mother provided proof she completed a parenting education class in August 2020, enrolled in an anger management class and attended 30 classes as of June 2021, and completed 12 sessions of domestic violence for

survivors' class in May 2022. On May 7, 2024, father's counsel requested, and the juvenile court set, a contested jurisdiction/disposition hearing.

According to the addendum report filed June 25, 2024, as of May 28th, mother's visits were supervised by M.M.'s caregiver. As there were no concerns about her visitation, they progressed to two hours, twice a week, with the paternal grandmother and M.M.'s siblings. The Department's recommendations remained the same.

On July 1, 2024, at the contested jurisdiction/disposition hearing, the Department submitted on its reports and recommendations; mother testified and provided exhibits for consideration. The juvenile court denied the request to dismiss the petition, found the allegations in the first amended petition true, and adjudged M.M. a dependent of the court. Family reunification services were ordered; father was on a waitlist to participate in programs available at his place of incarceration, and was authorized supervised monthly visits as permitted at his facility. Mother appealed M.M.'s removal; however, the appeal was dismissed after her attorney filed a brief pursuant to *In re Sade C.* (1996) 13 Cal.4th 952. (*In re M.M.* (Nov. 7, 2024, E084339).) On August 16, the court ordered a psychological evaluation for mother and set a six-month review hearing.

*3. Mother's first section 388 petition*

Mother filed a section 388 petition on September 20, 2024, requesting M.M. be returned to her custody under a family maintenance plan or placed with the maternal grandmother, an increase in visitation, and unsupervised community visits. In its September 17, 2024, letter, Jenesse Center, Inc., a domestic violence program, stated that she had participated in 25 domestic violence classes, 28 parenting classes, 22 anger

5

management classes, and four substance abuse classes. A hearing was set. The Department opposed mother's petition, expressing concerns about her temperament, boundaries, ability to manage her moods, findings from her psychological evaluation, and the legitimacy of the Jenesse programs. The Department was uncertain about the legitimacy of Jenesse's services and its effectiveness in addressing mother's needs. Her psychological evaluation recommended a comprehensive psychiatric evaluation to confirm her diagnoses[5] and to set a psychopharmaceutical regime.

On October 31, 2024, the juvenile court denied mother's section 388 petition without prejudice. It accepted the transfer of Ar.M., R.M.M., and R.A.M. only from Los Angeles County.

### 4. Six-month review period

In the six-month status review report filed December 17, 2024, the Department recommended continuation of family reunification services. Mother was gainfully employed, enrolled in college, and living in a four-bedroom home; her support system included maternal grandmother and two maternal aunts. She was diagnosed with PTSD, anxiety, oppositional defiant disorder (ODD), and depression; she sees a psychiatrist every 30 days. The social worker opined that she has demonstrated no discernible benefits from the courses she has taken with Jenesse, she exhibits erratic mood swings,

---

[5] Dr. Jaymer Jesser provided a probable diagnosis of adjustment disorder, posttraumatic stress disorder (PTSD), cannabis use disorder, narcissistic personality disorder, antisocial personality disorder, and paranoid personality with unspecified personality disorder (negativistic) type.

and is confrontational, aggressive, and uncooperative, all to the detriment of her overall progress.

Father remained incarcerated with a release date of December 17, 2024. The Department sent him pictures, letters, and a copy of his case plan on four occasions; however, his facility did not offer reunification services. Father received parenting correspondence program materials, but had no visits due to his incarceration. Upon release, he planned to reside in a halfway house while working on stabilizing his living and employment situation. He expressed a strong desire to reunify with M.M.

Subsequently, the Department reported that mother had completed a domestic violence and parenting education program in late 2024, and drug tested negative on all tests, but continued using marijuana. Her unsupervised visit on December 24th went well. An inspection of her home revealed appropriate provisions. She also demonstrated she has benefited from the courses she completed through the Jenesse Center. The Department recommended liberalized visits for father, and granted an extended holiday visit between M.M. and his siblings at the paternal grandmother's home; however, mother objected to placing him with the paternal grandmother because she wanted the children returned to her care.

On January 10, 2025, at mother's request, the juvenile court set the six-month status review hearing contested. It ordered the Department to provide father with housing assistance, referrals, and supervised visitation a minimum of twice a week for one hour each visit; both parents were to return on February 25th without further notice.

*5. Mother's second section 388 petition*

In mother's second section 388 petition, filed January 29, 2025, she sought termination of dependency jurisdiction and assistance in obtaining a restraining order against father. Regarding the change in circumstances, she had completed several domestic violence classes, parenting education classes, anger management classes, life skills classes, and substance abuse classes; she was attending monthly psychiatric meetings and all scheduled visits. A hearing was set; the court clerk notified father of the hearing at many addresses, including his JV-140 address. The court also accepted transfer of mother's two oldest children (K.T-P. and V.V.) from Los Angeles County.

In response to mother's section 388 petition, the Department recommended granting family maintenance services but denying termination of the dependency. Mother had obtained stable housing, engaged in successful weekend and overnight visits, and was progressing on her case plan. Father was referred for a psychological evaluation, and parenting, anger management and domestic violence programs. The Department provided him the service providers' contact information on January 6, 2025; however, it was unable to provide housing assistance due to the program's requirements. On February 15, it received a five-day investigative referral regarding father; it was investigating the allegations with law enforcement. Thus, the Department recommended a pause in his visits pending conclusion of the investigation. Mother filed a restraining order against father, but it was later denied.

At the contested hearing, father was absent, but his counsel was present. The juvenile court ordered an immediate referral for wraparound services for mother and

8

supervised visitation for father at the Department's office, with the children's wishes taken into consideration. The contested hearing and mother's section 388 petition were continued to April 10, 2025.

     *6. Contested six-month review addendums and hearing*

     In its six-month status review report (regarding M.M.'s older siblings and half siblings) filed March 27, 2025, the Department requested a continuance to complete its investigation regarding the allegations against father. The children were doing well in mother's care; however, there were concerns with some of the children's behaviors (Ar.M., R.M.M., R.A.M. and M.M.). Ar.M., R.A.M. and R.M.M. were scheduled for forensic interviews on April 2. Father was living in transitional housing, actively looking for work, and was not on any medications. The Department provided him referrals for a psychological evaluation, parenting, anger management, and domestic violence programs, but the referrals for anger management and domestic violence were denied due to confusion over his incarceration and residence outside the county. The referrals were resubmitted on February 6. He had three visits in March; however, on March 12 two children declined to attend. Mother complained that father's visits were doing more harm than good. He complained that mother manipulates the children and affects their visits. The Department had concerns that mother may be influencing her children to refuse to visit father.

     On March 7, 2025, mother expressed her wish to terminate the case. The social worker opined that while she has demonstrated her ability and willingness "to provide care and stability to her children," she "has exhibited erratic mood swings and has

frequently been confrontational with the Department, since the children returned to her care." Father's visits were progressing, with the more recent ones being "productive, safe and the children enjoyed spending time with [him]"; however, he needed to make more progress on his services and realize his visitation time is mainly for him and his children.

By April 7, 2025, the Department requested a continuance to complete its investigation of allegations of sexual abuse by father and physical abuse by the paternal grandmother. It further requested a suspension of their visits until such investigation concludes. Ar.M. made disclosures at the forensic interview of abuse by the father and paternal grandmother. R.M.M. was "closed off and unwilling to answer," and R.A.M. said mother told her to say that the paternal grandmother and father abused her. On April 10, father informed the juvenile court that he was enrolled in, and was almost complete with, a parenting class, he had yet to receive any referral for a domestic violence program, and his insurance was no longer allowing him to see his current therapist. The court continued the hearings on both the contested six-month review and section 388 petition to terminate the dependency; all parties were ordered to return on May 28, 2025. Father was present to hear the court's orders. The Department mailed notice of the continued hearings to father on May 7, 2025, checking the box that it was recommending a change in orders, placement, custody, or status and specified "Terminate dependency"; however, it sent the notice to California Rehabilitation Center and High Desert Detention Center. One notice of the continued hearing was sent to father's JV-140 address; however, it stated the Department recommended "*No change in orders, services, placement, custody, or status*."

10

In an addendum report filed May 22, 2025, the Department, for the first time, recommended termination of the dependency, the children remain in mother's care, sole legal and physical custody of them be granted to her, and supervised visitation for father. It further asked the juvenile court to deny mother's section 388 petition due to it "reaching an inconclusive decision on the recent allegations against the father . . . and the paternal grandmother." Since February 25, the children were in mother's care on an extended visit. Mother had enrolled in additional domestic violence and individual counseling programs on May 17, and was consistent in ensuring that the children received necessary education services.

The Department participated in the investigation concerning the allegations against father and the paternal grandmother. Mother accused father of putting his mouth on R.A.M.'s private parts; Ar.M. described him as a pedophile who placed his finger in her private parts, and she did not want to have visits with him. At her forensic interview, Ar.M. claimed he touched her inappropriately (rubbed her private area side to side with his finger over her clothes) in a Red Lobster restroom while the family was celebrating the paternal grandmother's birthday. Ar.M. accused the paternal grandmother of hitting her siblings with a hangar, leaving bruises. She later recanted and said mother told her to say those things. R.M.M. told the police the paternal grandmother hit him with a black hanger, leaving scars and scabs; however, at his forensic interview, he was unwilling to answer questions. R.A.M. accused father of abusing her and paternal grandmother of whooping her, but later recanted, saying mother coached her to say those things. The Department provided copies of the children's forensic medical exams. The only child

with signs of physical abuse was R.M.M. who had scars and abrasions in different healing stages; however, he refused to disclose information about the marks.

Father denied all the allegations in the referral, asserting he "would never do 'anything disgusting' to his children." He accused mother of coaching the children to falsely accuse him of sexual misconduct; he recalled a similar incident in 2019 when mother coached K.T-P. to report false allegations against him, but the maternal grandmother intervened and advised the child to tell the truth. Similarly, the paternal grandmother denied the allegations and maintained she never hit the children with any object; however, she spanked R.M.M. one time on his bottom with an open hand. She was willing to speak to law enforcement and suspected mother was coaching the children. She said Ar.M. uses the restroom on her own and would not seek assistance from father. Mother denied coaching the children. Based on the interviews and exams, the Department found the allegations against father and paternal grandmother inconclusive.

Father's visits included talking to and playing with the children. At times, he failed to correctly redirect or handle their behaviors. He cancelled a few visits for lack of transportation and blamed mother for sabotaging his visitation by seeking a restraining order on the paternal grandmother, knowing she is his only transportation option. Her temporary restraining order against the paternal grandmother was granted on May 12, 2025, pending a hearing on June 3.

The Department referred father to parenting education, anger management, and domestic violence programs on February 6, 2025. As of April 16, father had not started the domestic violence and anger management programs, but was attending individual

therapy sessions and parenting classes. The Department was unable to get progress reports from his service providers. On May 7, the social worker spoke with father "about [the Department's] intention to close the case and how [the Department] referred him to all services, but he was not benefiting from [them]." Regarding his referrals to service providers, father failed to provide any verification or information about the services he was enrolled in.

The Department reported that although mother is confrontational, frequently disregards caseworker instructions, resists feedback, and avoids productive dialogue, she has independently enrolled the children in services. It had no current safety concerns about the children being in her care, as she has consistently provided for their medical, dental, educational, and mental health needs since February 2025. As for father, the Department reported that since it was unable to verify his participation in the required programs, he has not demonstrated progress in his services.

At the contested six-month status review hearing on May 28, 2025, father failed to appear. His counsel stated she received information from the Department that he wanted to appear telephonically; her numerous attempts to call him that morning were unsuccessful. Given the Department's recommendation to terminate the dependency, father's counsel requested the matter be set for a contested hearing; she expressed concerns regarding the addendum report because it appeared the Department was unaware of the information and documentation regarding father's progress in services. Initially, no party objected to setting and continuing the hearing; however, mother noted the case is eight years old, and her counsel said that if the only issue is visitation, mother

is agreeable to weekly supervised visits. The children's counsel stated it is customary to set the matter contested when the recommendation changes. After further discussion, the juvenile court was able to establish telephonic communication with father.

Following a brief confidential conversation with father, his counsel objected to the hearing moving forward because they did not have an adequate opportunity to talk. She expressed concerns about "the investigation regarding the allegations the children made against father" since "one of the children indicated that the mother was coaching them to lie and to make up things about" him. She was concerned about the ability of the parents "to set up any kind of visitation" since mother recently served the paternal grandmother with a restraining order, which means she is unable to supervise visitation or transport father to the visits. Referencing mother's behavior (uncooperative and absconding with the children) in Los Angeles County, counsel opined that father will be excluded from any kind of visitation unless the court puts a specific plan in place. She conveyed father's objection that he did not have 12 months of reunification services due to his incarceration, adding her belief that he was unable to complete some parenting and therapy. If the case were to close over her objection, she asked that father maintain his current visitation; she reiterated that her "three- to four-minute conversation with" him left her unable to present any evidence that may make a difference with his visitation.

Mother's counsel asked the juvenile court to follow the Department's recommendation and close the case because (1) mother had finished her case plan; (2) she had gone above and beyond what was asked of her; (3) she was willing to allow father supervised visits at his current schedule; (4) she was willing to have her mother supervise

14

the visits; and (5) if she interfered with his visitation, his recourse would lie in the family law court. According to mother's counsel, "[N]othing has been terminated from father. He would just have to use a different avenue." The Department submitted on its reports and recommendations and asked the court to deny the section 388 petition as moot. The children's counsel also submitted on the visitation remaining the same, adding the children want visits with father.

Acknowledging father's objection, the juvenile court stated, "[T]here was ample opportunity prior to today's hearing for father to contact [his attorney] and discuss the contents of the Department's report, which was filed in advance of this hearing or make himself available earlier in the day to speak about the matter. We didn't call the matter until after 11:30 which would have given [father] ample time to either be present in court or make telephonic contact. He is present currently and did have an opportunity to speak to counsel." The court adopted the Department's recommendations, except as to visitation, which it allowed to continue at its current schedule of two hours a week supervised by a person approved by mother or by a paid professional monitor at father's expense. The court terminated jurisdiction over father's objection, granted mother sole physical and legal custody "upon the filing of family law orders consistent with the Department's recommendation," and denied the section 388 petition as moot.

## II. DISCUSSION

Father contends the juvenile court erred in failing to continue the contested six-month review/section 364 hearing to give him the opportunity to present evidence challenging the Department's recommendation to terminate dependency jurisdiction and

15

issue exit orders.[6]  He argues the denial of his right to present evidence violated his due process rights.  The Department asserts the six-month review hearing had already been set as a contested hearing and mother's section 388 petition requested termination of the dependency, thus the court properly denied father's request for a continuance.  We conclude father had a right to present evidence both to challenge dismissal of the dependency action and the terms of visitation relevant to the exit order.  The denial of an evidentiary hearing on these issues deprived him of his due process right to present evidence, and the error was not harmless.

*A.  Governing Law and Standard of Review*

A court may grant a continuance in dependency proceedings so long as that continuance is not "contrary to the interest of the minor" and the party requesting it shows good cause.  (§ 352, subd. (a)(1)-(2).)  "We review the juvenile court's decision to deny a continuance for abuse of discretion.  [Citation.]  'Discretion is abused when a decision is arbitrary, capricious or patently absurd and results in a manifest miscarriage of justice.'"  (*In re D.Y.* (2018) 26 Cal.App.5th 1044, 1056.)

"[W]hen dependency jurisdiction is terminated with the child in the custody of one of his or her parents, section 362.4, subdivision (a), commits to the sound discretion of the juvenile court the authority to make an order determining a noncustodial parent's

---

[6] Father contends section 364 is applicable since the juvenile court issued its custody and visitation orders and terminated jurisdiction.  The Department responds the May 28, 2025, hearing was not a section 364 hearing, but a contested section 366.21, subdivision (e), hearing.  Regardless of how we label the hearing, the result is the same: the juvenile court terminated dependency jurisdiction over father's children and issued exit orders.

visitation." (*In re C.S.* (2022) 80 Cal.App.5th 631, 638; accord, *In re Armando L.* (2016) 1 Cal.App.5th 606, 616 (*Armando L.*) ["When a juvenile court terminates its jurisdiction over a dependent child, it is empowered to make exit orders regarding custody and visitation"].) "These orders become part of any family court proceeding concerning the same child and will remain in effect until they are modified or terminated by the family court." (*Armando L.*, at p. 616.)

"The power to determine the right and extent of visitation by a noncustodial parent in a dependency case resides with the juvenile court and may not be delegated to nonjudicial officials or private parties, including the parents themselves." (*Armando L.*, *supra*, 1 Cal.App.5th at p. 616.) "'This rule of nondelegation applies to exit orders issued when dependency jurisdiction is terminated.'" (*In re A.C.* (2011) 197 Cal.App.4th 796, 799; accord, *In re T.H.* (2010) 190 Cal.App.4th 1119, 1123 (*T.H.*).) While "[a] visitation order may delegate to a third party the responsibility for managing the details of visits, including their time, place and manner," the juvenile court has "'the ultimate supervision and control over'" whether visitation will occur. (*T.H.*, at p. 1123.)

"'[T]he juvenile court has broad discretion to make custody [and visitation] orders when it terminates jurisdiction in a dependency case (§ 362.4).' [Citation.] We review the juvenile court's exit orders for an abuse of that discretion." (*In re J.M.* (2023) 89 Cal.App.5th 95, 112-113.)

## B. Analysis

Here, in refusing to continue the contested six-month review hearing, the juvenile court found that father had "ample opportunity" to discuss the Department's report. We

disagree. The initial six-month review report filed March 27, and the addendum report filed April 7, 2025, recommended continuing dependency jurisdiction. The *first* notice the Department was changing its recommendations to terminate jurisdiction and issue custody and visitation orders came via the addendum report filed on May 22, 2025, six days before the May 28th hearing. Father's counsel informed the court that her brief communication with father left her unable to present evidence that may make a difference with his visitation. She expressed concerns about the ability of the parents "to set up any kind of visitation" given mother's uncooperative behavior toward social services and her recent service of a restraining order on the paternal grandmother, father's source of transportation to visits. Also, due to his incarceration, father had insufficient time to receive 12 months of services, making him unable to complete the parenting program and therapy.

"Due process includes the right to be heard, adduce testimony from witnesses, and to cross-examine and confront witnesses." (*Armando L.*, *supra*, 1 Cal.App.5th at p. 620; see *David B. v. Superior Court* (2006) 140 Cal.App.4th 772, 777 ["[p]arents have a fundamental liberty interest in the care, custody, and management of their children"].) While it is possible that father may not have been able to offer evidence to prevent the juvenile court from terminating the dependency, we cannot say the same about the court's visitation order. The record shows that mother frequently disregarded caseworker instructions; she absconded from LACPS and took the children to Arizona for three years. The Department acknowledged that she was less than cooperative in facilitating visitation with father. She was diagnosed with ODD, demonstrated erratic mood swings, and is

confrontational. She made inaccurate statements regarding father and the paternal grandmother abusing and/or neglecting the children and coached the children to lie about both father's and the paternal grandmother's alleged abusive acts. Mother obtained a restraining order against the paternal grandmother, knowing the paternal grandmother is father's only transportation option. And, she (mother) has resisted feedback and avoided productive dialogue.

Notwithstanding the above, the juvenile court terminated jurisdiction and issued an exit order that granted father visitation two hours a week supervised by *a person approved by mother* or by a *paid professional monitor at father's expense*. Father is prejudiced by this order. If mother must approve the person who supervises his visitation, she controls whether the visitation happens. He has stated that the paternal grandmother is his means of transportation, but mother has a restraining order against her. Even if the restraining order has expired, there is no indication mother will approve the paternal grandmother as the visitation supervisor. If mother does not approve of any family member supervising visits, then father has to pay for a professional monitor; however, there is no indication how father will be able to pay for this (and the reunification services programs he may be required to complete) when he is unemployed. Thus, if mother wants to, she is empowered to prevent father from visiting his children altogether.

Although father can seek to modify visitation in family law court, such court must defer to the dependency court's order concerning custody and visitation unless it finds *a significant change of circumstances*. (*Armando L.*, *supra*, 1 Cal.App.5th at pp. 619-621 [juvenile court abused discretion in denying evidentiary hearing on issues related to jurisdiction and exit orders]; see also *In re Michael W*. (1997) 54 Cal.App.4th 190, 192, 196 [presuming prejudice, and holding that "when requested, an evidentiary hearing must be held"]; *Heidi S. v. David H*. (2016) 1 Cal.App.5th 1150, 1164 [before modifying the visitation schedule set forth in the exit order, the family court must find a significant change of circumstances that warrants that modification].) According to the Department's reports, the circumstances are that mother is confrontational and uncooperative with father regarding visitation. If this never changes, then there is no "significant change of circumstances" to warrant changing the visitation order.

For the above reasons, we conclude the juvenile court abused its discretion when it denied father's request for a hearing to provide further evidence to challenge the Department's recommendations.

## III.  DISPOSITION

The juvenile court's orders, filed June 9, 2025, are reversed and the matter remanded for the court to conduct a contested hearing at which father may present evidence concerning his present circumstances, including any issues affecting visitation with his children.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER
J.

We concur:

RAMIREZ
P. J.

FIELDS
J.